The STATE of Ohio, Appellant,

v.

DETERS, Appellee.

[Cite as *State v. Deters* (1998), 128 Ohio App.3d 329.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970369.

Decided June 12, 1998.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sherry Green*, Assistant Prosecuting Attorney, for appellant.

*J. Robert Andrews*, for appellee.

GORMAN, Judge.

In a single assignment of error,[1] the state appeals from the trial court's order granting defendant-appellee Stephen Deters's motion to suppress the results of

---

1. The state's appeal is brought pursuant to R.C. 2945.67 and Crim.R. 12(J). On April 17, 1998, by Memorandum Decision, this court dismissed this appeal because the state had not

certain sobriety tests conducted by Ohio Department of Natural Resources officers after they removed him from his boat in the Ohio River and transported him to shore. Because there was probable cause to arrest Deters for operating a watercraft under the influence of alcohol when the officers removed him from his boat, the trial court erred in suppressing the subsequently gained evidence of intoxication.

At 9:25 p.m., on September 1, 1996, Officers Thompson and Cates of the Ohio Department of Natural Resources, Watercraft Division, were in a patrol boat in the middle of the Ohio River. The annual Riverfest fireworks had just concluded and an estimated five to eight hundred boats were in the vicinity. The officers observed Deters operating his twenty-one-foot pontoon boat in reverse. Officer Cates sounded the patrol boat's horn to inform Deters that the patrol boat was behind him. Deters continued to move his boat backwards. Officer Thompson swerved to the right to avoid being struck. Deters then sped forward passing other boats. Officer Thompson observed that the stern light on Deters's boat was not lit. The patrol boat followed with flashing lights activated for one hundred yards before Deters stopped.

Once alongside, the officers held the two boats together. Officer Thompson informed Deters of the stern-light problem. Officer Thompson then made a visual inspection for the required flotation devices and safety equipment aboard Deters's boat. Upon request, Deters produced his license, and the inspection revealed the correct number of personal flotation devices, fire extinguishers, directional signals, sound devices, and anchor line. Officer Thompson testified that, during this safety check, he noticed a smell of alcohol on Deters. He described Deters's speech as slurred. Both officers observed Deters lose his balance. In response to Officer Thompson's question, Deters said he had consumed four beers.

While Deters stood in his boat, Officer Thompson ordered him to remove his glasses. Standing in the patrol boat, Officer Thompson shined his light in Deters's eyes and conducted the horizontal gaze nystagmus test ("HGN"). Officer Thompson testified that he observed five out of six clues indicating to him that Deters was under the influence of alcohol. He also determined that Deters was unable to recite the alphabet satisfactorily. Twenty minutes after they stopped Deters, the officers removed him from his boat and transported him to shore in their patrol boat for further field sobriety tests and a breathalyzer test.

---

made the Crim.R. 12(J) certification part of the record on appeal. As the state has since been able to demonstrate that it had properly filed the certification in the trial court, within seven days of the trial court's order granting the motion to suppress, we have granted its motion for reconsideration and now answer the assignment of error. See App.R. 12.

The breathalyzer test revealed that Deters had a concentration of .183 grams of alcohol per two hundred ten liters of breath.

At 10:23 p.m., after conducting these tests, Officer Thompson formally arrested Deters. He advised Deters of his *Miranda* rights and cited him for operating a watercraft while under the influence of alcohol or drugs in violation of R.C. 1547.11(A)(1) and for operating a watercraft with a concentration of ten hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath in violation of R.C. 1547.11(A)(4).

Deters moved to suppress the results of the tests conducted on shore. After hearing the testimony of the two officers, the trial court was skeptical of the reliability of the HGN and alphabet tests. In its findings the trial court gave "no weight" to the HGN test administered by Officer Thompson from his patrol boat while Deters was standing in his boat, and while the two boats bobbed up and down on rough water in the middle of the river. The court also gave "little weight to an alphabet test done unsatisfactorily without explanation other than he lost track somewhere in saying them."

The state principally argues that the trial court wrongly concluded that the act of removing Deters from his boat and transporting him to the shore was "an arrest." The state relies on Officer Thompson's testimony that Deters was not under arrest at that time. Therefore, absent an intent to arrest Deters, it argues, there was no arrest. The state claims that these acts were merely a reasonable and limited detention constitutionally justified to determine whether Deters was under the influence of alcohol. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Because Deters was seized for purposes of the Fourth Amendment, having submitted to the officers' authority, the resolution of the assigned error rests upon whether each step of the officers' subsequent search for evidence of criminal activity falls within an exception to the Fourth Amendment's warrant requirement. See *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; see, also, *California v. Hodari D.* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690.[2]

---

2. R.C. 1547.11, which prohibits a person from operating a watercraft while impaired by alcohol or drugs, mirrors R.C. 4511.19, the automotive drunk-driving statute. The two statutes "should be construed in a consistent and harmonious fashion." *State v. LePard* (1989), 52 Ohio App.3d 83, 84, 557 N.E.2d 166, 168, cited in *State v. Morrissey* (Feb. 16, 1994), Hamilton App. Nos. C–930065 and C–930066, unreported, 1994 WL 44403. Giving effect to the legislature's interest in safe navigation of Ohio's waterways, even at the expense of minimal intrusions into personal privacy, pursuant to R.C. 1547.521(A)(4), state watercraft officers may constitutionally board, without a warrant, any vessel to conduct a routine safety inspection. *State v. Botsch* (1989), 44 Ohio App.3d 59, 541 N.E.2d 489. See, also, *Michigan Dept. of State Police v. Sitz* (1990), 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412, citing

■ An arrest without a warrant is constitutionally valid if, at the moment the arrest is made, the arresting officer has probable cause to make it. *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225–226, 13 L.Ed.2d 142, 145; *State v. Heston* (1972), 29 Ohio St.2d 152, 58 O.O.2d 349, 280 N.E.2d 376, paragraph one of the syllabus, certiorari denied (1972), 409 U.S. 1038, 93 S.Ct. 534, 34 L.Ed.2d 486; *State v. Timson* (1974), 38 Ohio St.2d 122, 67 O.O.2d 140, 311 N.E.2d 16, paragraph one of the syllabus.

■ The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense. *State v. Heston*, 29 Ohio St.2d at 155–56, 58 O.O.2d at 350–351, 280 N.E.2d at 379, citing *Beck v. Ohio*, 379 U.S. at 91, 85 S.Ct. at 225, 13 L.Ed.2d at 145; *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 20 O.O.3d 17, 419 N.E.2d 10; see, also, *Ornelas v. United States* (1996), 517 U.S. 690, 694–696, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911, 918–919. This is a question of law. The arresting officer's subjective belief or motivation in the detention of an individual is not material to the legality of the detention; the correct test is whether there was objective justification for the detention and arrest. *State v. Robinette* (1997), 80 Ohio St.3d 234, 236, 685 N.E.2d 762, 765, relying on *Whren v. United States* (1996), 517 U.S. 806, 812–814, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 97–98; *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.

■ As the immediate predicate to its conclusion that the officers lacked probable cause to arrest while in the river, the trial court noted:

"The officer himself stated he was suspicious, but under those difficult conditions, he needed more tests in order to determine whether or not he had probable cause to make an arrest."

This statement demonstrates that the trial court incorrectly considered the officers' subjective beliefs in justifying its legal conclusion that they did not have probable cause to arrest Deters at that time. The analysis prompted the trial court to suppress the results of the onshore field sobriety tests and the breathalyzer test.

■ Review of the trial court's commendably detailed findings of fact and legal conclusions entails a two-step inquiry. First, this court must review the trial court's findings of historical fact only for clear error, "giv[ing] due weight to

*Brown v. Texas* (1979), 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (in upholding the legality of sobriety checkpoints, the court weighed "the gravity of the public concerns served by the [search and] seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty").

inferences drawn from those facts" by the trial court. *Ornelas v. United States,* 517 U.S. at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Next, accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. In this case, the de novo determination is "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. See *Ornelas v. United States,* 517 U.S. at 696, 116 S.Ct. at 1661–1662, 134 L.Ed.2d at 919.

As the credibility of witnesses was primarily for the trial court sitting as the trier of fact to determine, it was within the trial court's prerogative to give little or no weight to the HGN and alphabet tests conducted in the middle of the river. In light of the uncontradicted testimony of both officers that Deters operated his watercraft in an erratic manner, however, the trial court's finding that Deters "was stopped for [an] equipment violation, not for impaired driving," was clearly erroneous.

The historical facts demonstrate that Deters operated his watercraft in an erratic manner. The other facts of record, which were given credence by the trial judge, are that Deters had slurred speech, smelled of alcohol, and admitted to consuming four beers. Taken together, as a matter of law, these facts and circumstances alone provided a prudent officer with probable cause to arrest Deters for operating a watercraft while under the influence of alcohol. *State v. Heston;* see, *e.g., Cincinnati v. Kromski* (1995), 102 Ohio App.3d 621, 623, 657 N.E.2d 796, 797–798 (evidence of erratic driving, odor of alcohol, and admission of recent consumption of alcohol provided probable cause to arrest).[3]

■ Because probable cause to arrest existed at the time the officers placed Deters in their patrol boat, the field sobriety and breathalyzer tests conducted on the shore did not violate the Fourth Amendment proscription against warrantless searches. A search incident to a lawful arrest is permissible even if the search

---

3. See, also, *State v. Tino* (Mar. 5, 1997), Hamilton App. Nos. C–960393, C–960394 and C–960395, unreported, 1997 WL 106339 (evidence of driving impairment, odor of alcohol, admission of drinking four beers, and failure of field sobriety tests provided probable cause to arrest); *State v. Lee* (Sept. 18, 1996), Hamilton App. No. C–960123, unreported, 1996 WL 526659 (evidence of erratic driving, odor of alcohol, slurred speech, and bloodshot eyes provided probable cause to arrest); *State v. Stiebner* (Feb. 23, 1994), Hamilton App. Nos. C–930246, C–930247 and C–930248, unreported, 1994 WL 52382 (odor of alcohol, admission of drinking, and failure of field sobriety tests provided probable cause to arrest); and *State v. Morrissey* (Feb. 16, 1994), Hamilton App. Nos. C–930065 and C–930066, unreported (odor of alcohol, slurred speech, admission of drinking four beers, and failure of field sobriety tests provided probable cause to arrest for operating watercraft while intoxicated).

precedes the formal arrest, if probable cause to arrest precedes the search and the arrest is not based on evidence uncovered in the search. See *Rawlings v. Kentucky* (1980), 448 U.S. 98, 110–111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645–646.

Therefore, the trial court's April 24, 1997 order granting Deters's motion to suppress is reversed, and this cause is remanded to the trial court for further proceedings consistent with law and this opinion.

*Judgment reversed*
*and cause remanded.*

SUNDERMANN, P.J., and MARIANNA BROWN BETTMAN, J., concur.