DECISION.
In a single assignment of error, the city of Cincinnati appeals from the judgment of the trial court granting defendant-appellee Lance Sims's motion to suppress evidence. We sustain the assignment of error and reverse the trial court's judgment.
At approximately 3:00 a.m., on November 18, 2000, Cincinnati Police Officer Rebecca Hopkins was traveling eastbound on St. Lawrence Avenue in Cincinnati, Ohio. At the same time, Sims was traveling northbound on Oakland Avenue, when he failed to stop at the stop sign at the intersection of St. Lawrence and Oakland. Sims caused Officer Hopkins to apply the brakes on her police cruiser in order to avoid a collision. Officer Hopkins then initiated a stop of Sims's car.
Sims's window was down, and when Officer Hopkins approached Sims, she noticed that he had a pronounced odor of an alcoholic beverage about him. Officer Hopkins asked Sims for his license, which Sims produced with no difficulty. Officer Hopkins then asked Sims if he knew why he had been stopped. Sims admitted that he had disobeyed the stop sign, but claimed that he had not seen the officer's cruiser. Sims also admitted that he had consumed a few alcoholic drinks. Officer Hopkins noticed that Sims's eyes were watery and bloodshot, but that his speech sounded normal.
Officer Hopkins asked Sims to get out of the car so that he could perform field sobriety tests. It was cold that evening, and Sims wore no coat as he stepped from his car. Officer Hopkins administered a series of field sobriety tests, including the walk-and-turn test, and the one-leg-stand test. Being untrained in the administration of the horizontal gaze nystagmus (HGN) test, Officer Hopkins requested the assistance of a trained officer.
Sergeant Robert Glassmeyer responded to the scene. Upon his arrival, he, too, noticed Sims's watery and bloodshot eyes, and an odor of alcohol about him. Sergeant Glassmeyer testified that Sims's speech may have been somewhat slurred, but indicated that this behavior may have been the result of the fact that Sims was shaking and shivering from the cold. Sergeant Glassmeyer proceeded to administer the HGN test.
As a result of the officers' observations and Sims's performance on the field sobriety tests, Sims was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), and operating a motor vehicle with a prohibited alcohol concentration in violation of R.C. 4511, 19(A)(3), as well as a stop-sign violation under Cincinnati Municipal Code 506-35.
Sims filed a motion to suppress evidence. After a hearing, the trial court found that Officer Hopkins had properly administered the walk-and-turn test and the one-leg-stand test, but that Sergeant Glassmeyer had not properly administered the HGN test. The court held that the police officers lacked probable cause to arrest because Sims's "passing performance on the properly administered field sobriety tests demonstrated an absence of impaired coordination or impaired motor skills and a normal ability to divide his attention among multiple tasks." On this basis, the trial court granted the motion to suppress.
On appeal, the city argues that the trial court erred in finding that the police officers lacked probable cause to arrest Sims. We agree.
The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person in believing that the defendant is committing or has committed an offense.[1] Review of the trial court's findings of fact and conclusions of law entails a two-step inquiry. First, this court must review the trial court's findings of historical fact only for clear error, "giving due weight to inferences drawn from those facts" by the trial court.[2] Next, accepting those properly supported facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. In this case, the de novo determination is "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount[ed] to" probable cause.[3]
As the credibility of the witnesses was primarily for the trial court, sitting as the trier of fact, to determine, it was within the court's prerogative to give little or no weight to the field tests conducted by Officer Hopkins and Sergeant Glassmeyer.[4] In State v. Homan,[5] the Supreme Court of Ohio held that while field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests [have been] administered or where * * * the test results must be excluded for lack of strict compliance."[6]
In Homan, the court held that even though the police officer had not strictly complied with established police procedure when administering the HGN and walk-and-turn tests, the officer's observations of erratic driving; the driver's red and glassy eyes; the smell of alcohol on the driver's breath; and the driver's admission of consumption of alcoholic beverages amply supported the officer's decision to place the driver under arrest.[7] In the present case, we hold that, in light of the trial court's own findings of fact, its determination that Sims was arrested without probable cause was contrary to law.
The historical facts demonstrate that Sims failed to stop at a stop sign, causing Officer Hopkins to brake to avoid colliding with him. Sims had a strong odor of alcohol about him. Sims admitted that he had run through the stop sign, but claimed that he had not seen the cruiser. Sims also admitted that he had consumed alcohol, and his eyes were watery and bloodshot. Taken together, as a matter of law, these facts and circumstances alone provided a prudent officer with probable cause to arrest Sims for operating a motor vehicle while under the influence of alcohol.[8]
Accordingly, we sustain the city's assignment of error, reverse the judgment of the trial court, and remand this cause for further proceedings consistent with law and this decision.
Gorman, P.J., and Doan, J., concur.
[1] State v. Heston (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376,379, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225;Huber v. O'Neill (1981), 66 Ohio St.2d 28, 419 N.E.2d 10.
[2] Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 1663; State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972;State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus.
[3] See Ornelas v. United States, 517 U.S. at 696,116 S.Ct. at 1661-1662.
[4] See State v. Deters (1998), 128 Ohio App.3d 329, 334, 714 N.E.2d 972,975.
[5] (2000), 89 Ohio St.3d 421, 732 N.E.2d 952.
[6] Id. at 427, 732 N.E.2d at 957.
[7] Id. at 427, 732 N.E.2d at 957-958.
[8] See Deters, supra (evidence of erratic operation of a watercraft, slurred speech, odor of alcohol, and admission of alcohol consumption provided probable cause to arrest); State v. Tonne (Sept. 24, 1999), Hamilton App. No. C-980710, unreported (odor of alcohol, empty beer cans scattered throughout car, red and watery eyes, and swaying while adequately performing field tests provided probable cause to arrest);Cincinnati v. Kromski (1995), 102 Ohio App.3d 621, 623, 657 N.E.2d 796,797-798 (evidence of erratic driving, odor of alcohol and admission of recent consumption of alcohol provided probable cause to arrest); Statev. McWilliams (Mar. 1, 1995), Hamilton App. Nos. C-940378 and C-940379, unreported (evidence of erratic driving, watery eyes, slurred speech, and admission of recent alcohol consumption provided probable cause to arrest).