OPINION
Sherman Edmonds is appealing from the decision of the trial court overruling his motion to suppress both evidence and statements he made. Following the suppression decision, Mr. Edmonds pled no contest to possession of crack cocaine. He was duly sentenced and on appeal, represented by counsel, he questions only the decision of the trial court overruling his motion to suppress. The facts of the case and the rationale of the trial court are fully set forth in the following relevant portions of the decision of the trial court:
 "Defendant seeks suppression of tangible evidence (heroin and crack cocaine) and statements. The defendant argues (1) that there was no probable cause demonstrated for the issuance of the search warrant, (2) that the `knock and announce' provisions were violated, and (3) that all statements made by Defendant were made without a waiver of Defendant's Miranda rights and were not made voluntarily.
 "The Court invited written memoranda. The State's arguments were filed March 16, 2001, and the Defendant's arguments were filed March 30, 2001.
 "The testimony conflicts on several material facts, so as the trier of facts, the Court finds the testimony of Sergeant Hamilton to be credible as it conflicts with the testimony of Officer House. (Emphasis supplied). The Court finds the facts as follows: Detective Mark Stapleton, as affiant, obtained a search warrant from Judge Cannon of the Dayton Municipal Court to search 1110 South Broadway in the city of Dayton. At the time of execution of the search warrant, the back door was breached by Sergeant Hamilton after Detective Williams pounded on the door, did a knock and announce, and after Lieutenant Chaboli played a bullhorn repeating a tape-recording announcing the presence of the police to execute a search warrant. After 20 seconds and after hearing no response or movements inside the house, Sergeant Hamilton rammed the door. The entry team consisted of eight, plus another six officers on scene. Sergeant Hamilton went upstairs and found Defendant and his wife, Sheila Edmonds, lying on the bed. At the foot of the bed, both Sergeant Hamilton and Officer House saw, in plain view on a metal television tray, a plate with crack residue, a razor blade, a cellophane baggie, and a blue storage box. Officer House opened the storage box and found money and gel caps containing suspected heroin. Sherman and Sheila Edmonds were handcuffed behind their backs, face down on the bed. Sergeant Hamilton testified that he Mirandized Defendant, and Officer House testified that he heard Sergeant Hamilton read Defendant his Miranda rights. In a combination of volunteered statements and statements in response to Officer House's questioning, Defendant said that the crack on the table was his for his personal use; that anything (drugs) found in the house belonged to him (and not Sheila Edmonds); and that they don't sell drugs from the house.
 "Regarding the first issue of probable cause for the issuance of the search warrant, the Court finds, pursuant to a four-corners review of the affidavit, that it established probable cause and that there was a constitutional basis for Judge Cannon to issue the search warrant.
 "Regarding the second issue of `knock and announce' compliance, the Court finds constructive refusal of admittance. The Court finds that a period of 20 seconds from the time of Detective Williams' knock and announce to Sergeant Hamilton's ram of the door, given the use of the bullhorn message together with officer shouting, was a reasonable time to allow for a response from the occupants, under the totality of the circumstances. The Court finds compliance with O.R.C. 2935.12 and applicable case law.
 "Regarding the third issue of statements, the Court finds that the State has met its burden in establishing that Defendant was given his Miranda
warnings and that Defendant knowingly, intelligently, and voluntarily waived those rights and offered the statements that he made voluntarily and without coercion. Defendant chose to speak without the invocation of his right to remain silent or his right to counsel.
 "Based on the foregoing, the court OVERRULES Defendant's motion to suppress in its entirety." Docket 35.
Mr. Edmonds has abandoned his first argument, to-wit, that there was no probable cause demonstrated for the issuance of a search warrant, and brings us only the following two assignments of error on his other issues:
 "1. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS DUE TO IMPROPER EXECUTION OF THE SEARCH WARRANT.
 "2. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF HIS RIGHTS."
Mr. Edmonds' argument under his first assignment of error is that the officers violated the Fourth Amendment by failing to wait an appropriate time, after knocking and announcing their presence, before taking a battering ram to his door. Sgt. Hamilton testified at the hearing that the police waited about twenty seconds after announcing their presence, which included playing a bullhorn to emphasize their presence for purposes of exercising a search warrant, before Sgt. Hamilton himself rammed opened the back door of the residence. Tr. 24-28. Sgt. Hamilton testified that he had been on over 100 warrant-serving teams, and that they can't wait too long after announcing their presence before forcing an entry because people could be "arming themselves," "destroying evidence," and "hiding." Tr. 30.
His first assignment of error is overruled by authority of this court's recent decision in State v. Allen (Jan. 18, 2002), Montgomery App. No. 18788. In Allen, this court upheld a forced entry where the facts were remarkably similar to the present case, including the loud announcements by the officers of their presence and the use of a bullhorn, but the wait before the forced entry was only ten seconds. The court in Allen cited an earlier case from this court in which the wait was only ten to fifteen seconds. State v. Boyd (May 21, 1993), Montgomery App. No. 13425. This court in Allen also cited United States v. Spikes (C.A. 6, 1998),158 F.3d 913, where the Court of Appeals held that a forced entry four seconds after a knock on the door was reasonable where police announced their presence with a bullhorn prior to knocking on the door.
When considering a motion to suppress, the trial court assumes the role of the trier of fact and, as such, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Accordingly, upon review of the decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent and credible evidence, thereby "giv[ing] due weight to inferences drawn from those facts" by the trial court. State v. Deters (1998),128 Ohio App.3d 329-334, citing Ornelas v. United States (1996),517 U.S. 690. Accepting those facts as true, this court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. Deters at 334.
The trial court found that Officer Hamilton's testimony that the wait was about twenty seconds more credible than Officer House's testimony that it was only between ten and fifteen seconds, but this court has found that a five to ten second wait is not too short a time before the door is forcibly opened. Allen, supra.
The "knock and announce" rule is codified in R.C. 2935.12(A) as follows:
 "When making an arrest or executing an arrest warrant or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance."
The courts have uniformly construed this rule to allow admittance when there is silence after the knock and announce, which is construed as an implied refusal to admit.
The State, in its brief, after arguing that there was no "knock and announce" violation, presents an alternate argument that because the drug evidence seized in this case would have inevitably been discovered regardless of a "knock and announce" violation, the exclusionary rule does not apply. Brief, 8. This proposition has been rejected by the Court of Appeals of Clermont County, Twelfth District, in State v.Taylor (1999), 135 Ohio App.3d 182, 186. We choose, however, not to address the issue because any announcement of our position on it would be only dicta. We will reserve the issue for an appropriate case, if one appears. Because we find that there was no violation of a "knock and announce" rule, we overrule the first assignment of error and affirm the decision of the trial court on that issue.
In his second assignment of error, Mr. Edmonds argues that he did not "voluntarily waive of [sic] his Miranda rights, and voluntarily make statements, when he was handcuffed behind his back, barely-clothed, and laying [sic] face down on a bed." Brief, 8. Officer Hamilton testified that he had read the Miranda rights to Edmonds and his wife, who was with him on the bed and handcuffed also at the time and "they said they understood their rights." Tr. 34. He further testified that he did not question defendant at all (Tr. 34), and that after Mirandizing them he went out to the van, got the camera, and took pictures of the door and then of "both suspects." Tr. 39. Officer House, whose testimony was not credited by the trial court as Officer Hamilton's, testified that Mr. Edmonds voluntarily stated that any drugs found in the residence were his and for his own personal use and were never sold, and it was after that statement that Officer Hamilton read the Miranda rights to defendant and his wife. Tr. 50-51, 57. We find the record contains competent, credible evidence to support the trial court's finding that the State met its burden in establishing that Edmonds was given his Miranda warnings, and that any statements he made were voluntary and without coercion. Moreover, Edmonds never asked to see counsel before he blurted out that any drugs found were for his personal use and not for sale. The second assignment of error is, therefore, also overruled, and the judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.