[Cite as *State v. Ruehlman*, 2011-Ohio-6717.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100784 |
| | | TRIAL NO. B-0809962 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ADAM RUEHLMANN, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 28, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Chief Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy A. Smith*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**CUNNINGHAM**, **Judge.**

{¶1}     Pursuant to R.C. 2945.67 and Crim.R. 12(K), the state appeals from the trial court's order granting defendant-appellee Adam Ruehlmann's motion to suppress marijuana seized from his backpack.  A police officer had stopped Ruehlmann on suspicion that he was engaged in a drug deal.  During the brief detention, the officer had received information over a police computer link that typically reports felony offenses that Ruehlmann was wanted under a Florida warrant.  Because the arresting officer then possessed probable cause to arrest Ruehlmann and thus to search his backpack incident to the lawful arrest, we must reverse.

{¶2}     On December 22, 2009, Springfield Township police officer Peggy Hehman was on patrol in a high-crime area plagued by drug activity.  She observed Ruehlmann, carrying a backpack, walking along North Bend Road.  After sighting Officer Hehman, Ruehlmann circled the block and frequently looked over his shoulder at the officer's patrol car.  The occupant of a Ford Explorer parked nearby also scrutinized Officer Hehman and Ruehlmann.  Believing that he was about to engage in a drug deal, Officer Hehman approached Ruehlmann.

{¶3}     Officer Hehman asked if Ruehlmann needed help.  He appeared nervous and responded that he was out for a walk.  The officer asked Ruehlmann for identification.  While Ruehlmann waited outside the patrol car, Officer Hehman entered Ruehlmann's identification information into the patrol car's mobile computer terminal.  Within moments, an audible tone revealed that LEADS, the Law Enforcement Automated Data Service, had reported that Ruehlmann had an open warrant for his arrest in Florida.  Springfield Township police officer Jerry Trentman arrived to assist.  Ruehlmann informed the officers that the Florida warrant was not valid.

{¶4}    While the warrant was being confirmed, Ruehlmann appeared nervous and began to move away from the officers.  The officers asked if Ruehlmann had "anything illegal on him."  He admitted that he had "some weed."  In response to further questioning, Ruehlmann offered that he had "a pound" of marijuana.  A search of his backpack revealed 470 grams of marijuana stored in a large freezer bag.  Officer Trentman informed Ruehlmann of his right to remain silent under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602.  After being read the *Miranda* warning, Ruehlmann admitted that he had been on the street to make a drug deal.  The Hamilton County Grand Jury subsequently returned a two-count indictment charging Ruehlmann with marijuana possession and trafficking.

{¶5}    Ruehlmann moved to suppress both the marijuana seized and his inculpatory statements.  At the initial May 13, 2009, hearing on the suppression motion, Officer Hehman was the only witness to testify.  The officer described the events leading up to the search of Ruehlmann's backpack.  On cross-examination, she admitted that she ultimately learned that the Florida warrant was "out of pick-up area."  That is, the Florida authorities would not come to Ohio to take custody of Ruehlmann.  The officer noted that she had received no confirmation as to whether the warrant was for a felony or a misdemeanor offense.  But she testified, based upon her 15 years of police experience, that warrants appearing on LEADS were for felony offenses and that "if it's a misdemeanor it doesn't go nationwide."

{¶6}    At the conclusion of the hearing, the trial court carefully and fully stated the facts upon which its decision was based.  The court properly found that once Officer Hehman had received knowledge of the outstanding Florida warrant, she had had probable cause to arrest Ruehlmann.  Although the court acknowledged some confusion in the terminology used by the police officer, it declared that the marijuana had been discovered pursuant to a search incident to a valid arrest.  The trial court denied Ruehlmann's motion as to the marijuana.  The trial court, however,

found that Ruehlmann's statements that he had "a pound" of "weed" had been made under custodial interrogation without a prior *Miranda* warning. The court ordered the suppression of those two statements.

{¶7} After a gap of 17 months, the case finally proceeded to trial. Officer Hehman testified again about the encounter on North Bend Road, now employing different terminology to describe it. Both she and Officer Trentman testified that Ruehlmann had been detained, not arrested, after she had received the LEADS "hit" on the Florida warrant. In response to that and other testimony, the trial court noted that "I do have some concerns about the underpinning for my ruling on the motion to suppress." The trial court ultimately declared sua sponte a mistrial and reopened the hearing on the motion to suppress.

{¶8} At the renewed hearing, Officer Hehman again testified. She largely recounted the same events that she had described in the first hearing. But Officer Hehman added, for the first time in these proceedings, that when she and Officer Trentman had approached Ruehlmann, both officers, then standing within feet of Ruehlmann, had smelled the odor of marijuana. According to her testimony, Officer Hehman believed that Ruehlmann had not been under arrest until after the smell of marijuana had been detected.

{¶9} The trial court indicated that it gave no weight to the officer's testimony regarding the smell of marijuana. The court found that while the officers possessed reasonable and articulable suspicion to detain Ruehlmann, they lacked probable cause to arrest him until after they had conducted a full custodial search of his backpack and had found the marijuana stored within. Since the probable cause to arrest had arisen after the unjustified search of the backpack, the trial court granted that portion of the motion seeking the suppression of the marijuana. The state appealed.

{¶10} In its sole assignment of error, the state argues that the trial court wrongly granted Ruehlmann's motion to suppress as Officer Hehman had probable cause to arrest Ruehlmann on the basis of the LEADS hit on the Florida warrant alone, and that she had conducted a legal search incident to that arrest that resulted in the discovery of the marijuana. We agree.

{¶11} Our review of the trial court's commendably detailed findings of fact and legal conclusions entails a two-step process. See *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶49 et seq. First, we accept the trial court's findings of historical fact if they are supported by competent, credible evidence. See *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. Then this court must make an independent determination, as a matter of law, without deference to the trial court's legal conclusions, if those facts meet the applicable constitutional standards. See id.; see, also, *State v. Deters* (1998), 128 Ohio App.3d 329, 334-335, 714 N.E.2d 972. In this case, the resolution of the state's assignment of error depends upon the latter determination of whether the trial court applied the correct legal standard in concluding that Officer Hehman had lacked probable cause to arrest and search Ruehlmann.

{¶12} The state must offer sufficient justification for Officer Hehman's detention and search of Ruehlmann at its inception and at each subsequent stage of the inquiry. As "a police officer is free to ask a person for identification without implicating the Fourth Amendment," Officer Hehman was entitled to begin her contact with Ruehlmann. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.* (2004), 542 U.S. 177, 185, 124 S.Ct. 2451. The officer's concerns about Ruehlmann's nervous and evasive behavior in a high-crime area provided ample justification for her to detain him briefly to verify his identity and to check via the computer terminal in her patrol car for open warrants. See *Illinois v. Wardlow*

5

(2000), 528 U.S. 119, 124, 120 S.Ct. 673; see, also, *Terry v. Ohio* (1968), 392 U.S. 1, 19-20, 88 S.Ct. 1868.

{¶13}   As the trial court correctly noted, the full search of Ruehlmann's backpack could only have been justified by the existence of probable cause to arrest. The test for probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the accused had committed an offense.   See *State v. Heston* (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376.   As we noted in *State v. Deters*, 128 Ohio App. 3d at 333, 714 N.E.2d 972, establishing probable cause "is a question of law.   The arresting officer's subjective belief * * * is not material to the legality of the detention; the correct test is whether there was objective justification for the detention and arrest."

{¶14}   R.C. 2963.12 provides a police officer justification to effect a warrantless arrest of a fugitive from justice "upon reasonable information that the accused stands charged in the courts of any state" with a serious, felony-like offense. See, also, R.C. 2935.04.   An officer's reasonable, objective belief that a crime has been committed may be based upon information derived from reasonably trustworthy sources.   See *Columbus v. Lenear* (1984), 16 Ohio App.3d 466, 468, 476 N.E.2d 1085, citing *State v. Timson* (1974), 38 Ohio St.2d 122, 311 N.E.2d 16. Information that an officer receives over a police computer link to the LEADS system is a presumptively trustworthy source and thus sufficient to establish probable cause for arrest.   See *State v. Schultz*, 11th Dist. No. 2003-L-156, 2005-Ohio-345, ¶21; see, also, *State v. Jara* (Nov. 8, 2001), 8th Dist. No. 79592; *Case v. Kitsap Cty. Sheriff's Dept.* (C.A.9, 2001), 249 F.3d 921, 928 (noting "a long line of cases" holding that a computer "hit" establishes probable cause for a valid arrest).

{¶15}   We hold that once Officer Hehman received the LEADS system report that Ruehlmann was wanted under a Florida warrant typically issued for felony

offenses, she possessed information from a reasonably trustworthy source to establish probable cause to arrest Ruehlmann without an Ohio warrant. See R.C. 2963.12. A subsequent administrative determination that the suspect had been detained "out of the pick-up area" and would not be returned to the foreign state seeking his arrest does not affect our analysis. The proper focus is not on whether the suspect was ultimately prosecuted under the foreign warrant, but on whether the facts and circumstances known to the officer at the time of the arrest constituted probable cause. See *State v. Cronin*, 1st Dist. No. C-100266, 2011-Ohio-1479.

{¶16} Once Officer Hehman possessed probable cause to conduct the lawful custodial arrest of Ruehlmann, she also possessed justification to search his person and his belongings to ensure that no weapons were present and to prevent the destruction or concealment of evidence. See *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034; see, also, *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 100 S.Ct. 2556; *State v. Gilmore*, 1st Dist. Nos. C-070521 and C-070522, 2008-Ohio-3475, ¶14. A search incident to arrest was particularly justified here by Ruehlmann's nervousness and his efforts to move away from the officers when they approached him.

{¶17} Because the search incident to arrest that uncovered the marijuana in Ruehlmann's backpack was performed after probable cause to arrest had arisen, the search did not violate the Fourth Amendment. See *State v. Jones*, 88 Ohio St.3d 430, 439, 2000-Ohio-374, 727 N.E.2d 886. The officers required no additional justification to search the backpack. While this court accepts the trial court's finding giving no weight to the officer's testimony regarding the smell of marijuana, that finding is immaterial to our resolution of the issue. The assignment of error is sustained.

{¶18} Therefore, the judgment of the trial court granting Ruehlmann's motion to suppress the marijuana seized from his backpack is reversed. We note that the state has

not assigned as error, or argued in this appeal, that the trial court erred in ordering the suppression of Ruehlmann's pre-*Miranda* statements. The case is remanded to the trial court for further proceedings consistent with law and this opinion.

Judgment reversed and cause remanded.

**DINKELACKER, P.J.,** and **FISCHER, J.,** concur.

Please Note:

The court has recorded its own entry on the date of the release of this opinion.