[Cite as *State v. Smith*, 2013-Ohio-2208.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110727 |
| | | TRIAL NO. B-1102515 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| SIEARRA SMITH, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 31, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Kory Jackson*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}     The state appeals from the trial court's order granting defendant-appellee Siearra Smith's motion to suppress a revolver found in her purse after the warrantless search of her vehicle.  Police had stopped Smith for driving with a suspended driver's license and other minor traffic infractions.  During the stop, an experienced police officer observed Smith make furtive movements to secret what he believed to be a weapon in her purse.  The officers removed Smith from her vehicle and searched it for weapons, finding a loaded revolver in her purse.  Because a full custodial arrest had not been effected, and Smith could have reentered her vehicle at the conclusion of the investigation where she could have regained immediate control of the revolver, the officers had a reasonable basis to search the vehicle.  We must reverse.

{¶2}     Smith was driving her vehicle westbound on Waycross Road in the city of Forest Park, Ohio.   She had a single passenger with her, Troy Willis.  Forest Park Police Officer Eric Wetterich observed Smith and, as was the custom of his department, entered her license-plate number into his in-car computer.  The computer search revealed that Smith, the vehicle owner, was driving with a suspended driver's license.  Officer Wetterich, an experienced police officer with nine years' service, followed Smith and observed her commit several turn-signal violations.   Smith pulled into a fast-food restaurant and stopped at the drive-thru service lane.  Officer Wetterich pulled in behind Smith.  Smith's vehicle then "suddenly pulled away" from the drive-thru and entered a parking spot on the restaurant lot.

{¶3}     Officer Wetterich parked his cruiser behind Smith's vehicle.  He observed her "reach[ing] back to the right, into the middle console area of the vehicle."  Smith "appeared to be looking or digging or hiding something at this point."  Her motions were "a little bit frantic."  Concerned that Smith may have been reaching for, or secreting, a weapon, when Smith attempted to exit from the vehicle, Officer Wetterich activated the cruiser lights, and called for backup.

{¶4}    He approached Smith and expressed his concerns regarding her movements in the car.  She appeared nervous.  Smith explained that she was merely getting her wallet out of her purse.  Officer Wetterich told her that he was going to search the vehicle for everyone's safety.  She denied having a weapon.

{¶5}    After the arrival of Forest Park Police Officer Fredrick Smith, Willis and Smith were asked to leave the vehicle.  It was determined that Willis also had a suspended driver's license.  Willis was placed in Officer Smith's cruiser but was not handcuffed. Smith stood next to the cruiser parked some distance from her vehicle.  She was not frisked or handcuffed.

{¶6}    Officer Wetterich began his search and immediately spotted a digital scale in plain sight in the driver's side door pocket.  He next spotted Smith's purse.  It was located in the area of the rear seat where he had seen Smith make her furtive motions.  He unzipped the purse and spotted a loaded revolver on top of the purse contents.  Smith denied knowing that the revolver was in her purse.

{¶7}    Smith was indicted for carrying a concealed weapon, and for improper handling of a firearm in a vehicle, both punishable as fourth-degree felonies.  She moved to suppress the revolver as the fruit of an unreasonable search.  At the conclusion of a hearing on the motion, the trial court carefully and fully stated the facts upon which its decision was based.  The trial court concluded that Officer Wetterich had made a valid traffic stop and that his legitimate concern for his safety would have permitted a simple frisk of Smith and Willis for weapons.  But, the court concluded that once Smith was out of her vehicle and was no longer within reach of her purse, there was no danger to the officers' safety and their subsequent search of the vehicle was unreasonable.  The court granted the motion to suppress, and the state timely appealed pursuant to R.C. 2945.67 and Crim.R. 12(K).

{¶8}    In its sole assignment of error, the state argues that the trial court erred in granting Smith's motion to suppress.  We agree.

{¶9} Our review of the trial court's detailed findings of fact and legal conclusions entails a two-step process. *See In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 49 et seq. First, we accept the trial court's findings of historical fact if they are supported by competent, credible evidence. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Then this court must make an independent determination, without deference to the trial court's legal conclusions, whether those facts meet the applicable constitutional standards as a matter of law. *See id.; see also State v. Deters*, 128 Ohio App.3d 329, 334-335, 714 N.E.2d 972 (1st Dist.1998).

{¶10} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. Unless one of the few well-delineated exceptions applies, warrantless searches are per se unreasonable. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

{¶11} In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L. Ed. 2d 1201 (1983), the United States Supreme Court recognized one exception to the warrant requirement for the limited protective search of an automobile during a lawful traffic stop. *See Arizona v. Gant*, 556 U.S. 332, 347, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (the *Michigan v. Long* rule remains an "established exception to the warrant requirement"). The exception derives from the recognition that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Long* at 1047. Thus, the search of the passenger compartment of an automobile to uncover weapons, limited to those areas in which a weapon may be placed or hidden, is permissible, as long as the investigating police officer possesses an articulable and objectively reasonable belief that the suspect is potentially dangerous and that she may gain immediate control of a weapon. *See id.* at 1048-1049; *see also State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988); *State v.*

*Huth*, 153 Ohio App.3d 102, 2005-Ohio-4303, 836 N.E.2d 623, ¶ 13 (1st Dist.). We determine the existence of a reasonable suspicion that a suspect was dangerous and that a weapon was present by evaluating the totality of the circumstances, considering those circumstances through the eyes of a reasonable and prudent police officer. *See Bobo* at paragraph two of the syllabus.

{¶12} In this case, the resolution of the state's assignment of error depends upon the trial court's legal conclusion that Officer Wetterich lacked a reasonable and articulable suspicion to search Smith's vehicle once she had been removed from the vehicle. Smith argues that once outside of her vehicle and standing next to the police cruiser, she lacked the ability to gain immediate control of the revolver. Thus she maintains that the officers had engaged in an unconstitutional, free-ranging search for evidence of crime simply because she had been caught committing a traffic offense. *See Gant* at 345 (a police officer's unbridled discretion to rummage at will among a person's private effects implicates a central concern of the Fourth Amendment).

{¶13} It is beyond cavil that Officer Wetterich possessed authority to stop Smith's vehicle. *See Dayton v. Erickson*, 76 Ohio St.3d 3, 9, 665 N.E.2d 1091 (1996). Officer Wetterich, an experienced officer, was patrolling alone when he encountered Smith. She was driving with a suspended license, and he had observed her make several turns without using her turn signals. He observed her speed away from the drive-thru window and then abruptly pull into a parking spot after his cruiser followed her.

{¶14} When Officer Wetterich's cruiser pulled in behind Smith's parked vehicle, he observed her reaching over her right shoulder and making furtive motions as if she were trying to obtain or secret something in her purse. The trial court's findings that Smith's actions caused Officer Wetterich reasonable concern for his safety are well supported in the record.

{¶15} In response to this concern, Officer Wetterich and Officer Smith removed Smith and her passenger from the vehicle. Willis was frisked and placed in a police cruiser, but was not handcuffed. Smith was asked to stand near Officer Smith's cruiser but was not frisked or handcuffed. Until this point of the encounter, the trial court concluded that the scope of the officers' intrusion into Smith's liberty was reasonable and justified by concern for their safety. But once Smith had been removed from the vehicle, the purse, and any weapon contained within it, was no longer within her immediate reach. Thus the trial court concluded that Smith no longer posed a danger to the officers, and any justification to search further for weapons was lost.

{¶16} But the lawfulness of Officer Wetterich's subsequent search of Smith's vehicle and purse was not limited by the fact that Smith and Willis had been removed from the vehicle. A subsequent search for weapons in a vehicle is justified by an officer's particularly vulnerable position during a traffic stop. Where a full custodial arrest has not been effected, the individual may be permitted to reenter her vehicle at the conclusion of the investigation where she could regain immediate control of a weapon. *See Long*, 463 U.S. at 1049-1052, 103 S.Ct. 3469, 77 L.Ed.2d 1201; *accord Gant*, 556 U.S. 332, at 352, 129 S.Ct. 1710, 173 L.Ed.2d 485 (Scalia, J., concurring) ("the possibility of access to weapons in the vehicle always exists [if an arrest has not been made], since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed").

{¶17} This court has long held that if vehicle occupants would be permitted to return to the vehicle, an officer acts reasonably when, out of a concern for his safety, the vehicle is searched for weapons prior to allowing its occupants to reenter. *See State v. Sieg*, 1st Dist. No. C-940953, 1995 Ohio App. LEXIS 2814 (July 5, 1995) (it was not unreasonable for investigating officer to look under the driver's seat of the suspect's vehicle to determine whether weapons were present); *see also State v.*

*Caulton*, 1st Dist. No. C-080034, 2008-Ohio-6090, ¶ 10 ("even where a suspect is out of his car, a *Terry* search may extend to areas in the car that would be readily accessible to a suspect upon his return to the car"); *State v. Walker*, 2d Dist. No. 24542, 2012-Ohio-847, ¶ 28 and 31; *State v. Morlock*, 3d Dist. No. 1-12-21, 2013-Ohio-641, ¶ 14; *State v. Wade*, 9th Dist. No. 26275, 2012-Ohio-4255, ¶ 20; *State v. Broughton*, 2012-Ohio-2526, 969 N.E.2d 810, ¶ 23 (10th Dist.).

{¶18} Under the totality of the circumstances, we hold that Officer Wetterich possessed a reasonable basis to search Smith's vehicle and to look into her purse in order to determine whether, for the officers' safety, any weapons were present. After he had stopped her vehicle, Officer Wetterich had observed Smith making furtive movements in her purse. At the time of the search, Smith was not under arrest. And though Officer Wetterich indicated Smith would not be permitted to drive the vehicle away, it was likely that she would have returned to the vehicle to recover her purse and thus gain immediate control of a weapon had the search not uncovered the revolver. *See Morlock* at ¶ 14.

{¶19} Since at the time of the search Smith was not under arrest and secured in handcuffs inside a police cruiser without the possibility of leaving police custody, the rule of *Arizona v. Gant,* proscribing the warrantless search of an automobile if the suspect is already in police custody, is not at issue here. *See Broughton* at ¶ 36. There was sufficient justification for a warrantless search at its inception and at each subsequent stage of the inquiry. *See Long,* 463 U.S. at 1048-1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201; see *also State v. Ruehlmann*, 1st Dist. No. C-100784, 2011-Ohio-6717, ¶ 12. And the scope of the search was "strictly circumscribed" by the exigencies which justified its initiation. *Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We sustain the state's assignment of error.

{¶20}    Therefore, the judgment of the trial court granting Smith's motion to suppress the revolver seized during the search of her vehicle is reversed.  The cause is remanded to the trial court for further proceedings consistent with law and this opinion.

Judgment reversed and cause remanded.

**HILDEBRANDT, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.