<hr />

**The STATE of Ohio, Appellant,**

v.

**PHOENIX, Appellee.**

[Cite as *State v. Phoenix*, 192 Ohio App.3d 127, 2010-Ohio-6009.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–100103.

Decided Dec. 10, 2010.

128

John P. Curp, Cincinnati City Solicitor, Ernest F. McAdams, City Prosecuting Attorney, and Gertrude Dixon, Assistant Prosecuting Attorney, for appellant.

Elizabeth E. Agar and Merlyn Shiverdecker, for appellee.

HILDEBRANDT, Presiding Judge.

{¶ 1} The lack of a sufficient amount of evidence demonstrating impairment precludes a finding of probable cause that a driver is operating his motor vehicle while impaired and makes any subsequent arrest—based only on that insufficient evidence—improper.

## I. Unlit Headlights Lead to Stop and Arrest

{¶ 2} On August 2, 2009, at about 10:30 PM, Sergeant Matthew Hamilton of the Ohio State Highway Patrol observed defendant-appellant Kristopher Phoenix driving without his headlights illuminated on River Road in Cincinnati. Phoenix's running lights and taillights, however, were on. Sergeant Hamilton initiated a traffic stop of Phoenix's vehicle.

{¶ 3} When Sergeant Hamilton told Phoenix the reason for the stop, Phoenix tried to turn his headlights on. According to Sergeant Hamilton, Phoenix "had a little bit of difficulty" doing so. But Phoenix was able to produce his license without difficulty. During this encounter, Sergeant Hamilton noticed an odor of alcohol coming from the vehicle and noticed an open beer bottle in the back seat. He also noticed a slight odor of alcohol coming from Phoenix, who told him that he had consumed "a couple of beers" just prior to being stopped. Sergeant Hamilton then noticed that Phoenix's eyes were glassy and bloodshot.

{¶ 4} Sergeant Hamilton asked Phoenix to perform three field sobriety tests. The first test Sergeant Hamilton administered was the horizontal-gaze nystagmus test. But since Hamilton only held the stylus six inches away from Phoenix during the test, the results of the test were invalid.[1] The second test Sergeant Hamilton administered was the walk-and-turn test, and the third test was the one-leg-stand test. The tests were properly administered, and Phoenix demonstrated one "clue" of impairment on each of the tests, which was a passing result.[2] Phoenix was arrested for driving while impaired ("OVI"), in violation of R.C. 4511.19(A)(1)(a).

{¶ 5} Phoenix filed a motion to suppress. At the beginning of the suppression hearing, the scope of the motion was narrowed by counsel, who stated that "[t]he gravamen of the argument is that taken into [sic] totality of the circumstances, there was not probable cause to arrest for the OVI." Sergeant Hamilton testified at the hearing, and the trial court entertained oral and written arguments. After considering the evidence and the arguments, the trial court issued an eight-page decision in which it set forth its factual findings and legal analysis. It granted Phoenix's motion. In one assignment of error, the state now appeals.

## II. Insufficient Indicia of Impairment

{¶ 6} As this court has recently noted, "[t]he legal standard for determining whether a law enforcement officer had probable cause to arrest an individual

---

1. The trial court determined that the test was not performed "in substantial compliance with National Highway Transportation Safety Administration (NHTSA) testing standards." The state has not challenged this determination.

2. This was, again, a determination made by the trial court that the state has not challenged.

for OVI is whether, 'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'"[3] This is an objective standard, not a subjective one.[4]

{¶ 7} In *Cincinnati v. Bryant,* this court held that a trial court had improperly determined that an OVI arrest lacked probable cause when the following factors existed: (1) the defendant had been stopped for backing out of a one-way street, (2) a "moderate" odor of alcohol emanated from him, (3) he had slightly slurred speech, (4) his eyes were watery and glazed over to some degree, (5) he exhibited confusion and clumsiness in locating his insurance card and when exiting from his vehicle, (6) and he admitted consuming alcohol.[5]

{¶ 8} In this case, the trial court found that (1) Phoenix was driving without his headlights illuminated, (2) he exhibited a "slight" odor of alcohol emanating from his breath, (3) he did not exhibit slurred speech, (4) his eyes were glassy and bloodshot, (5) he did not exhibit any difficulty producing his identification, exiting from the vehicle, or standing while outside the vehicle, (6) he admitted that he had consumed alcohol before driving his car, and (7) he demonstrated only one clue in each of the two properly administered field sobriety tests.

{¶ 9} This case is unlike *Bryant,* and the cases upon which it relied, in key ways. In *Bryant,* this court characterized the driving behavior (driving in reverse and going the wrong way on a one-way street) as "more suggestive of impairment than the nominal speeding at issue in *Taylor.*"[6] In this case, there was no slurred speech, and Phoenix had no difficulty getting out of his vehicle or producing his identification. And the odor of alcohol coming from Phoenix was "slight," as opposed to "moderate."

{¶ 10} The cases upon which we relied in *Bryant* are likewise distinguishable. Unlike *State v. Homan,* there was no evidence of erratic driving in this case.[7] Unlike *State v. Fisher,* the driving infraction was not as significant (driving 22 m.p.h. over the speed limit), the odor of alcohol was not "strong," Phoenix did not

---

3. *Cincinnati v. Bryant,* 1st Dist. No. C–090546, 2010-Ohio-4474, 2010 WL 3722777, at ¶ 15, quoting *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952.

4. Id., citing *State v. Deters* (1998), 128 Ohio App.3d 329, 333, 714 N.E.2d 972.

5. Id. at ¶ 27.

6. Id., citing *State v. Taylor* (1981), 3 Ohio App.3d 197, 198, 3 OBR 224, 444 N.E.2d 481.

7. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952.

struggle to produce his identification, and he did not perform poorly on the field sobriety tests.[8]   Unlike *State v. Lopez*, the driving infraction was again not as significant (driving 26 m.p.h. over the speed limit), and the odor of alcohol was not "strong." [9]   Unlike *Cincinnati v. Jacobs*, Phoenix did not have slurred speech and did not "fumble" for his license.[10]   Unlike *Cincinnati v. Sims*, the odor of alcohol was not "strong." [11]   Unlike *State v. Deters*, there was no erratic driving or slurred speech observed.[12]   Unlike *State v. Tonne*, there were no "beer cans * * * scattered throughout the vehicle" and no swaying when Phoenix exited from the vehicle or when he performed the field sobriety tests.[13]   And unlike *State v. Denlinger*, there was no slurred speech and no admission to consuming four "light Jack Daniels." [14]

{¶ 11} Since this case is sufficiently unlike *Bryant* and the cases upon which it relied, a different result is required.   Since there was insufficient evidence for a reasonable belief that Phoenix was impaired, the trial court properly determined that Sergeant Hamilton lacked probable cause to arrest Phoenix for OVI.

### III.   Conclusion

{¶ 12} For all the foregoing reasons, Sergeant Hamilton lacked probable cause to believe that Hamilton was impaired at the time of his arrest.   Therefore, the trial court properly granted Hamilton's motion to suppress.   The state's sole assignment of error is overruled, and we affirm the judgment of the trial court.

Judgment affirmed.

HENDON, J., concurs.

DINKELACKER, J., dissents.

DINKELACKER, Judge, dissenting.

{¶ 13} The history of OVI jurisprudence has followed a troubling path deviating between strict and substantial compliance with various tests, taking its rules

---

**8.**   *State v. Fisher*, 1st Dist. No. C–080497, 2009-Ohio-2258, 2009 WL 1360861.

**9.**   *State v. Lopez*, 1st Dist. Nos. C–020516 and C–020517, 2003-Ohio-2072, 2003 WL 1938217.

**10.**   *Cincinnati v. Jacobs* (Dec. 14, 2001), 1st Dist. Nos. C–010279, C–010280, and C–010281, 2001 WL 1591380.

**11.**   *Cincinnati v. Sims* (Oct. 26, 2001), 1st Dist. Nos. C–010178 and C–010179, 2001 WL 1295341.

**12.**   *State v. Deters* (1998), 128 Ohio App.3d 329, 714 N.E.2d 972.

**13.**   *State v. Tonne* (Sept. 24, 1999), 1st Dist. No. C–980710, 1999 WL 741812.

**14.**   *State v. Denlinger* (Feb. 2, 1983), 1st Dist. No. C–820252, 1983 WL 5416.

from such diverse sources as the Ohio Revised Code, breath-analyzer operation manuals, health department regulations, and the National Highway Traffic Safety Administration. This history has had a negative effect on the determination of probable cause. The analysis has eroded to a series of indicators that are either present or absent. With enough items present, probable cause is established. Without enough items present, it is not. The list of factors considered exists nowhere except within the thicket of case law addressing the issue. And even there, no consistent list can be discerned, and nowhere is any list comprehensive. In no other area of criminal law does this occur.

{¶ 14} In this area, we have wandered far afield from the guidance of the United States Supreme Court, which has held that probable cause is a flexible, commonsense standard.[15] An OVI case is like any other criminal case. The rules for probable cause are the same. It is not the result of some algorithm that has evolved in our courts over the years—i.e., "slight" odor of alcohol is plus one, "moderate" is plus two, "strong" is plus three, and the like.

{¶ 15} In determining whether probable cause to arrest existed, a court must ascertain whether, at the time of the arrest, the police officer had sufficient facts and circumstances within his knowledge to warrant a prudent person in believing that the defendant was committing or had committed an offense.[16] Probable cause does not emanate from "an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine 'philosophical concept existing in a vacuum,' but rather it requires a pragmatic analysis of 'everyday life on which reasonable and prudent men, not legal technicians, act.' "[17] The measurement of probable cause is taken from the vantage point of a prudent, reasonable, and cautious police officer, on the scene at the time of the arrest, and is guided by his experience and training.[18]

{¶ 16} In this case, Matthew Hamilton, as a sergeant for the Ohio State Highway Patrol, obviously had extensive experience with traffic stops and had been trained to detect impairment in the drivers he stopped. He observed Phoenix driving down a major roadway without his headlights activated. When

15.  *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527.

16.  *State v. Fisher,* 1st Dist. No. C–080497, 2009-Ohio-2258, 2009 WL 1360861, at ¶ 10, citing *State v. Heston* (1972), 29 Ohio St.2d 152, 155–156, 58 O.O.2d 349, 280 N.E.2d 376; *Cincinnati v. Wolfe* (Dec. 31, 2001), 1st Dist. Nos. C–010303 and C–010304, 2001 WL 1635766.

17.  *United States v. Davis* (C.A.D.C.1972), 458 F.2d 819, 821., quoting *Bell v. United States* (C.A.D.C.1958), 254 F.2d 82, 85, and *Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879.

18.  Id.

he initially stopped Phoenix, Phoenix apparently still did not realize that his headlights were off, because Hamilton had to inform him of the fact and ask him to turn them on. Phoenix struggled to do so, even though he admitted it was his car and he knew how to turn the lights on. Hamilton detected an odor of alcohol coming from Phoenix's breath, and Phoenix admitted that he had just left his mother's house, where he had just consumed two beers. His eyes were glassy and bloodshot. According to the video recording of the incident, Phoenix originally denied that he had alcohol in the vehicle but changed his answer when Hamilton pointed to the six-pack of beer, with one half-full bottle, on the floor of the back seat. Further, Phoenix did not completely perform the walk-and-turn test as instructed. And as the trial court noted, he "swayed and put his foot down at number two * * * [and] restarted the test when he put his foot down" during the one-leg-stand test.

{¶ 17} Sergeant Hamilton's observations, coupled with his training and experience, gave him sufficient information to warrant a reasonable officer in his position to believe that Phoenix had been driving while impaired. The arrest, I believe, was proper. I would reverse the judgment of the trial court.