[Cite as *State v. Carnes*, 2015-Ohio-379.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140188 |
| | | TRIAL NO. C-13TRC-13555 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JONATHAN CARNES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  February 3, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Joseph B. Suhre IV*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1} This is an appeal of the trial court's decision to overrule an administrative license suspension ("ALS") appeal in a drunk-driving case. We conclude that the ALS appeal was properly overruled, so we affirm the judgment of the trial court.

## I. Background

{¶2} Trooper Jeff Madden stopped Jonathan Carnes on suspicion of operating a vehicle while under the influence of alcohol or drugs ("OVI") and violation of a traffic-control device. Mr. Carnes refused to submit to field-sobriety and chemical tests, and, as a result, his driver's license was suspended. Mr. Carnes's attorney filed a motion to suppress evidence stemming from his arrest as well as an appeal of his ALS.

{¶3} Trooper Madden was called by the state to testify at the hearing on the motion to suppress. The state also introduced a video taken from Trooper Madden's cruiser. While patrolling Edwards Road, Trooper Madden observed Mr. Carnes pull out of a parking lot and "overshoot" the stop sign, leaving the car jutting out into the lane of traffic. Trooper Madden then stopped his car in the center lane, and watched Mr. Carnes back up out of the road. After traffic cleared, Mr. Carnes still did not turn and instead, reversed his car into the parking lot. Trooper Madden was suspicious and turned around to conduct a traffic stop.

{¶4} As Trooper Madden pulled into the parking lot, Mr. Carnes parked and got out of his car. Trooper Madden asked why he had pulled into the roadway and then failed to turn even after the roadway cleared. Mr. Carnes explained that when he pulled up he knew he could turn right. But after he stopped in the roadway, he backed up to see if he was "allowed to take a right" at that stop sign because he saw the sign indicating he

could not turn left. At that point, knowing he could turn right, and with two clear lanes, Mr. Carnes did not turn and pulled into the parking lot instead.

{¶5}    Trooper Madden testified that Mr. Carnes had red, glassy, bloodshot eyes, and that his breath had the odor of alcohol. But when asked if he had been drinking, Mr. Carnes indicated he had not had anything to drink. Mr. Carnes also admitted that he was driving on limited privileges due to an existing ALS. When Trooper Madden initiated field-sobriety tests, Mr. Carnes requested counsel and never completed any of the requested tests.

{¶6}    The trial court found that there existed reasonable suspicion to stop Mr. Carnes and probable cause to arrest. Following the probable cause hearing, counsel agreed to submit the OVI charges to the trial court based on the evidence entered at the probable-cause hearing. Mr. Carnes also tendered a no-contest plea to the traffic-control-device charge. The court accepted the plea and found Mr. Carnes guilty of the traffic-control-device offense. It found him not guilty, however, of the OVI charges. Mr. Carnes's counsel then asked for a ruling on his ALS appeal. The court overruled the appeal.

{¶7}    Before we address the merits of Mr. Carnes's appeal, we note that the state asserts Mr. Carnes has waived this issue because he failed to adequately address the issue below. But Mr. Carnes timely filed his notice of appeal in the trial court, subsequently asked for a decision on the appeal, and the court overruled his appeal. Therefore, Mr. Carnes properly preserved this issue for our review.

## II. Administrative License Suspension

{¶8}    Mr. Carnes' sole assignment of error is that the court erred when it overruled his ALS appeal. Under Ohio law, an individual driving a car on a public road is deemed to have given consent to a blood, urine, or breath test. R.C. 4511.191(A)(2). An

3

officer arresting an individual for OVI must request that the driver submit to a blood, urine, or breath test. R.C. 4511.191(A)(5)(a). If the driver refuses, then the officer must seize his license and inform the driver that his license has been suspended. R.C. 4511.192(D). The standard for appeal of such a suspension is "whether the arresting law enforcement officer had reasonable ground to believe the arrested person was operating a vehicle * * * in violation of division (A) or (B) of section 4511.19[.]" R.C. 4511.197(C)(1). The driver has the burden of proving by a preponderance of the evidence that the arresting officer lacked reasonable ground. R.C. 4511.197(D); *see State v. Tweddell*, 2d Dist. Clark No. 2010CA41, 2010-Ohio-4927, ¶ 25.

### A. Does reasonable ground = probable cause?

{¶9} The law is less than clear on whether the "reasonable ground" requirement to suspend a license has the same meaning as the "probable cause" that is necessary to effectuate an arrest. *See State v. McMahon*, 6th Dist. Wood No. WD-08-039, 2008-Ohio-6535, ¶ 20. In *McMahon*, the Sixth Appellate District suggested that "reasonable ground" is a "lesser metric" than probable cause. *Id.* The court reasoned that "had the legislature intended the standard in these matters to be 'probable cause' it was perfectly capable of using that term." *Id.*

{¶10} While the *McMahon* result seems sound as a matter of statutory construction, we note that there is support for a contrary view. In other contexts, courts have equated "reasonable grounds" with "probable cause." *See, e.g., Drape v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (noting "the terms 'probable cause' as used in the Fourth Amendment and 'reasonable grounds' as used in § 104 (a) of the Narcotics Control Act, 70 Stat. 570, are substantial equivalents of the same meaning"); *Rogers v. Barbera*, 170 Ohio St. 241, 246, 164 N.E.2d 162 (1960) (defining probable cause in malicious prosecution as "a reasonable ground of suspicion, supported

4

by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged," quoting *Ash v. Marlow*, 20 Ohio 119, 129 (1851)); *United States v. Pearce*, 356 F.Supp. 756, 758 (E.D.Pa.1973) (finding "reasonable ground" as used in 18 U.S.C. 3052, which empowers FBI agents to make arrests, is equivalent to "probable cause" as used in the Fourth Amendment); *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000) (providing that in search and seizures probable cause has been defined as "a reasonable ground for belief of guilt"); *State v. Fultz*, 13 Ohio St.2d 79, 81, 234 N.E.2d 593 (1968) (indicating that where an officer has reasonable ground to conclude a felony has been committed, he has probable cause to carry out an arrest).   But this is a question that we can leave for another day.  Here, even under the arguably higher probable-cause standard, there was more than sufficient evidence to suspend Mr. Carnes's license.

**B.  Even under the probable-cause standard there were sufficient grounds for the ALS**

{¶11}    The standard for probable cause is whether "at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence."  *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statue on other grounds as recognized in State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155.  The test is objective.  *State v. Deters*, 128 Ohio App.3d 329, 333, 714 N.E.2d 972 (1st Dist.1998). We apply de novo review to determine if the undisputed facts are sufficient to satisfy the legal standard of probable cause to arrest.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *see Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶12}   Appellant relies on *State v. Phoenix*, 192 Ohio App.3d 127, 2010-Ohio-6009, 948 N.E.2d 648 (1st Dist.), and *State v. Ruberg*, 1st Dist. Hamilton Nos. C-120619 and C-120620, 2013-Ohio-4144, to support his contention that Trooper Madden lacked probable cause to arrest him and therefore lacked reasonable ground to impose the ALS. Like the defendants in *Phoenix* and *Ruberg*, Mr. Carnes committed a traffic violation, had glassy and bloodshot eyes, had no slurred speech, had no difficulty exiting the vehicle, and had an odor of alcohol. *Phoenix* at ¶ 10; *Ruberg* at ¶ 2-5. Despite these similarities, Mr. Carnes's case differs in significant ways.

{¶13}   First, Mr. Carnes's behavior was suspicious.  He told Officer Madden that he initially backed up after seeing the no-left-turn sign to determine if he was allowed to turn right.   We find this explanation curious—which direction did Mr. Carnes expect to turn if he was not permitted to turn left or right at the stop sign?   Further, instead of proceeding about his business after backing up and waiting for traffic to clear, he turned back into the parking lot and parked his car.

{¶14}   In addition, the arresting officer was permitted to take into account his refusal to take chemical and field-sobriety tests in making the probable-cause determination. *See City of Westerville v. Cunningham*, 15 Ohio St.2d 121, 122, 239 N.E.2d 40 (1968). The Ohio Supreme Court has explained that

> [w]here a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, the taking of such a test will probably establish that he is intoxicated. Thus, if he is not intoxicated, such a test will provide evidence for him; but, if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take

such a test indicates the defendant's fear of the results of the test and his consciousness of guilt[.]

*Id. See City of Findlay v. Jackson*, 3d Dist. Hancock No. 5-14-02, 2014-Ohio-5202, ¶ 38; *State v. Molk*, 11th Dist. Lake No. 2001-L-146, 2002-Ohio-6926.

{¶15}   Further, Mr. Carnes volunteered that he was driving under an existing ALS. An officer's knowledge of a defendant's previous arrests or similar conduct is material to a probable-cause determination. *See Beck v. Ohio*, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Craig*, 110 Ohio St.3d 306, 312, 853 N.E.2d 621 (2006); *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978); *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816.

{¶16}   Here, sufficient indicia of impairment existed to cause a prudent officer to conclude that Mr. Carnes was impaired.  Mr. Carnes's traffic violation; red, glassy, and bloodshot eyes; odor of alcohol; suspicious behavior; curious explanation for his behavior after he spotted the officers; prior OVI and ALS; and refusal to submit to chemical and field-sobriety tests, taken together, established probable cause to believe that Mr. Carnes was driving under the influence.

{¶17}   Therefore, Mr. Carnes's sole assignment of error is overruled, and we affirm the judgment of the trial court.

Judgment accordingly.

**HENDON, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

7