[Cite as *State v. Greene*, 2019-Ohio-3155.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 18CA16 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| BRANDON E. GREENE, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for Appellant.

Benjamin Fickel, Hocking County Prosecutor, Logan, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant, Brandon Greene, appeals his convictions for aggravated vehicular assault, a third-degree felony in violation of R.C. 2903.08(A)(1), and OVI, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a). On appeal, Appellant contends that the trial court erred by overruling his motion to suppress. However, after a careful review of the record, we conclude that Appellant's sole assignment of error is without merit. Accordingly, we affirm the judgment of the trial court.

FACTS

{¶2} This matter was disposed of fairly early on in the litigation process when Appellant entered no contest pleas to all charges in the indictment after the trial court denied his motion to suppress.  It is noted that Appellee failed to file a statement of the case or facts.  App.R. 16(B) provides that Appellee's brief shall include a statement of the case and statement of the facts, as required by App.R. 16(A)(5) and (6), "except that a statement of the case or of the facts relevant to the assignments of error need not be made unless the appellee is dissatisfied with the statement of the appellant."  As the parties appear to agree on the facts and case history, we generally rely on the statement of the case and statement of the facts as set forth in Appellant's brief.

{¶3} On March 19, 2017, at approximately 1:12 a.m., a vehicle driven by Appellant collided with a vehicle driven by Hocking County Sheriff's Department Deputy Brian McManaway.[1]  Both drivers were transported to Hocking Valley Community Hospital to receive medical care.  Ohio State Highway Patrol Trooper Nathan Smith first responded to the scene of the accident to investigate.  Upon arrival, he found Appellant's vehicle had partially burned, but there was no alcohol

---

[1] Although it is not included in the facts as set forth by Appellant, it appears Appellant's vehicle went left-of-center and hit the cruiser head-on, resulting in serious injuries to both drivers.  Sergeant McManaway's injuries included a broken ankle which resulted in numerous surgeries.

inside of it.  After completing an investigation at the scene, he attempted to interview Appellant at the hospital.

{¶4} Upon arrival at the hospital, Trooper Smith found Appellant to be drifting in and out of consciousness.  Appellant had a laceration to his forehead and was on a backboard with a neck brace.  Trooper Smith noticed a slight odor of alcohol on Appellant but was not able to conduct any field sobriety tests.  Trooper Smith specifically noted that Appellant "could not keep his eyes open long enough to administer" the horizontal-gaze nystagmus test.  Appellant never admitted to drinking or using illegal drugs.  Trooper Smith nevertheless requested that Appellant submit to a urine screen.  Despite Appellant's altered state of consciousness, he agreed to submit to a urine test.  Trooper Smith read the BMV 2255 to Appellant at approximately 3:10 a.m.  At the time of the urine screen, Appellant was receiving an intravenous drip of Toradol and antibiotics.

{¶5} After obtaining the urine at 3:29 a.m., Trooper Smith completed form HP 28.  Trooper Smith failed to indicate whether Appellant was receiving any fluids intravenously at the time of the test.  He then sent the test to the post office to be mailed at 5:15 a.m. on March 19, 2017.  The laboratory received the urine on March 28, 2017, to perform the urinalysis.[2]

---

[2] Although not referenced by Appellee, the written plea agreement in the record indicates Appellant's urine tested positive for results greater than 200ng/mL of marijuana metabolite,  greater than 1000 ng/mL of methamphetamine, greater than 1000 ng/mL of amphetamine, and 0.078 grams by weight of alcohol per one hundred milliliters (grams percent) of urine +/- 0.002 grams by weight of alcohol per one hundred milliliters (grams percent) of urine.

{¶6} Thereafter, on May 19, 2017, Appellant was indicted in the Hocking County Court of Common Pleas with a third-degree count of aggravated vehicular assault, a third-degree felony, in violation of R.C. 2903.08(A)(1)(a), and four separate counts of driving under the influence (hereinafter "OVI"), first-degree misdemeanors, in violation of R.C. 4511.19.(A)(1)(a), R.C. 4511.19(A)(1)(j)(viii)(II), R.C. 4511.19(A)(1)(j)(ix), and R.C. 4511.19(A)(1)(j)(i). Appellant filed a motion to suppress certain evidence on October 19, 2017, which the trial court denied after holding two days of evidentiary hearings. As a result, on July 19, 2018, Appellant entered no contest pleas to all five counts of the indictment. The trial court merged the four misdemeanor counts of OVI for purposes of sentencing. Appellant was sentenced to a forty-eight-month prison term for aggravated vehicular assault, as well as an additional one-hundred-eighty-day's jail term on the merged counts of OVI, to run concurrent with the felony sentence. Appellant thereafter requested a stay of execution, which was denied by the trial court, and this appeal followed.

ASSIGNMENT OF ERROR

I.     "THE TRIAL COURT ERRED BY OVERRULING MR. GREENE'S MOTION TO SUPPRESS."

{¶7} In his sole assignment of error Appellant contends the trial court erred by overruling his motion to suppress. Appellant raises two arguments under his assignment of error. First, Appellant contends the trial court erred in holding that

Trooper Smith had probable cause to place him under arrest for suspicion of driving under the influence. Second, Appellant contends the trial court erred by holding that the testing was collected and performed according to the procedure manual of the laboratory that performed the analysis. The State counters by arguing the trooper had probable cause to arrest Appellant based upon the serious head-on collision caused by Appellant, as well as Appellant's condition when the trooper made contact with him at the hospital, which consisted of bloodshot eyes, lethargic speech, a slight of odor of alcohol and an inability to stay awake. The State contends that, based upon the totality of the circumstances as well as the trooper's training and experience, there was probable cause to arrest.

Standard of Review

{¶8} Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Jones*, 4th Dist. Washington No. 11CA13, 2012–Ohio–1523, ¶ 6, citing *State v. Roberts*, 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100 and *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th

Dist.2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Id.,* citing *Roberts* at ¶ 100 and *Burnside* at ¶ 8.

Probable Cause to Arrest for OVI

{¶9} A police officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. *State v. Roar*, 4th Dist. Pike No. 13CA842, 2014-Ohio-5214, ¶ 28; *State v. Hollis*, 5th Dist. Richland No. 12CA34, 2013-Ohio-2586, ¶ 28; *State v. Cummings*, 5th Dist. Stark No. 2005–CA–00295, 2006-Ohio-2431, ¶ 15, citing *State v. Heston*, 29 Ohio St.2d 152, 280 N.E.2d 376 (1972). When evaluating probable cause to arrest for OVI, the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. *Hollis*, *supra*; *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000)(superseded by statute).

{¶10} Furthermore, a police officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. *Hollis*, *supra*; *State v. Harrop*, 5th Dist. Muskingum No. CT2000–0026, 2001 WL 815538 (July 2, 2001), citing *Atwell v. State*, 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist.1973). This Court has recently observed that " '[t]he standard for

determining whether an officer had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was operating a motor vehicle while under the influence.' " *State v. King*, 4th Dist. Athens No. 18CA5, 2018-Ohio-4929, ¶ 17, quoting *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 18.

Legal Analysis

{¶11} Appellant first contends the trial court erred in holding that Trooper Smith had probable cause to place him under arrest for suspicion of driving under the influence. More specifically, Appellant argues that aside from the "slight odor" of alcohol, all of the indicators of impairment observed by Trooper Smith could be explained by, or attributed to, his severe injuries. Essentially, Appellant contends there is an alternative explanation for his condition at the time the trooper encountered him. In particular, Appellant contends that his bloodshot eyes could be attributed to the fact he had just experienced a serious accident and had received a significant head injury. He further suggests that although his speech was lethargic, the trooper had no past experience with him to know what his normal speech was like. Appellant also argues that he was drifting in and out of consciousness as a result of his injuries. Finally, Appellant contends that courts

frequently find an officer lacks probable cause to arrest for OVI where the odor of alcohol on a defendant is "slight" versus moderate or heavy.

{¶12} In the present case, a serious accident which resulted from Appellant's vehicle going left of center and hitting a cruiser head-on is what initiated the investigation. Trooper Smith's first encounter with Appellant was at the hospital, rather than the scene of the accident, as Appellant had already been transported there due to his injuries. The record indicates Trooper Smith observed a slight odor of alcohol upon encountering Appellant at the hospital, but that Appellant did not admit to drinking and no alcohol was found in his vehicle. The record further reveals that Trooper Smith observed Appellant's speech was lethargic, his eyes were bloodshot, and he was drifting in and out of sleep. Appellant also notes that Trooper Smith was unable to conduct any field sobriety testing. Although Appellant argues that the trooper's observations can be explained by the injuries he sustained in the accident, we believe they can equally be attributed to impairment from alcohol or drugs.

{¶13} Appellant cites *State v. Phoenix*, 192 Ohio App.3d 127, 2010-Ohio-6009, 948 N.E.2d 468, ¶ 9 (1st Dist. 2010), for the proposition that an officer lacks probable cause to arrest where the odor of alcohol on a driver is only "slight," rather than moderate to heavy. He further relies on *State v. Finch*, 24 Ohio App.3d 38, 492 N.E.2d 1254 (12th Dist. 1985) for the proposition that driving with

bloodshot eyes, a flushed face, or slurred speech, along with an odor of alcohol does not violate the law where the officer failed to observe any impaired motor coordination. However, in *State v. Jarrell*, 2017-Ohio-520, 85 N.E.3d 175, ¶ 41, this Court recently noted "several factors indicating operation of a vehicle under the influence of alcohol that a court should consider when reviewing the totality of the circumstances surrounding an officer's decision to administer field sobriety tests[,]" as observed by the Eleventh District Court of Appeals in *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761, fn. 2 (11th Dist. 1998); see also *State v. Coates*, 4th Dist. Athens No. 01CA21, 2002 WL 851765, *5. These factors are as follows, with no single one being determinative of the issue of impairment:

> (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity

of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*State v. Jarrell* at ¶ 41, quoting *Evans* at fn.2 and *Coates* at *5.

{¶14} Admittedly, the *Evans* factors have been utilized as part of a totality-of-the-circumstances analysis surrounding an officer's decision to administer field sobriety tests, a decision which must only be supported by reasonable, articulable suspicion, rather than probable cause. *State v. Burkhart*, 2016-Ohio-7534, 64 N.E.3d 1004, ¶ 23 (4th Dist.2016). However, because Trooper Smith was unable to conduct any field sobriety tests due to Appellant's physical condition and the fact he was in the hospital, we find a consideration of these factors provides guidance for determining if there was probable cause to arrest for OVI, when field sobriety testing cannot be administered.

{¶15} This case involves a serious accident caused by Appellant that occurred at 1:12 a.m. on an early Sunday morning, in which Appellant went left of center and hit an oncoming vehicle head-on, causing serious injury to the other

driver and himself. We believe the day and time of the accident, as well as the manner in which the accident occurred are all indicative of impairment based upon the above factors. To add to this, when the trooper encountered Appellant at the hospital after the accident, he noticed an odor of alcohol coming from Appellant's person, albeit slight, coupled with bloodshot eyes and lethargic speech. Additionally, the trooper observed that Appellant was drifting into and out of sleep as he was trying to engage him. Further, although Appellant references the fact that no field sobriety tests were performed, we have previously found probable cause to arrest, based upon the totality of the circumstances, even where field sobriety test results were determined to be inadmissible. *State v. King*, *supra*, at ¶ 20, citing *State v. Brungs*, 4th Dist. Pickaway No. 05CA18, 2005-Ohio-5776, ¶ 26.

{¶16} Considering the above factors as part of a totality-of-the-circumstances analysis, we find several factors present which, taken together with Trooper Smith's experience and training, would have provided him with probable cause to arrest, despite a possible, alternative explanation for Appellant's condition. Thus, we find the present case distinguishable from both *Phoenix* and *Finch*, in light of the serious accident caused by Appellant's driving. Here, the facts do not involve simply a "slight" odor of alcohol with no observation of impairment. Nor do they merely involve bloodshot eyes, slurred speech and an

odor of alcohol, in the absence of any impaired motor coordination.  Therefore, we find no merit to this portion of Appellant's argument.

{¶17} Appellant next contends the trial court erred by holding that the testing was collected and performed according to the procedure manual of the laboratory that performed the analysis.  More specifically, Appellant argues that the trial court erred by neglecting to address Trooper Smith's failure to indicate that Appellant was receiving intravenous fluids.  Appellant further argues the trial court erred in determining that the urine sample was appropriately refrigerated pursuant to regulation.

{¶18} When a defendant challenges the blood or urine test results in a motion to suppress, the state must show substantial compliance with the relevant provisions of R.C. 4511.19 and O.A.C. § 3701–53.  *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 42.  "Once the state has shown substantial compliance, the burden shifts to the defendant to demonstrate that he would be prejudiced by anything less than technical compliance."  *State v. Brown*, 109 Ohio App.3d 629, 632, 672 N.E.2d 1050 (4th Dist. 1996).  Further, only errors that are "clearly de minimis" or "minor procedural deviations" can be excused under the substantial-compliance standard.  See *State v. Mullins*, 4th Dist. Ross No. 12CA3350, 2013–Ohio–2688, ¶ 10, citing *State v. Burnside*, *supra*, at ¶ 34; see also *State v. Mayl, supra*, at ¶ 49.

{¶19} Appellant essentially contends that O.A.C. § 3701-53-6 requires that testing be performed in accordance with the laboratory's written procedure manual and that here, the Ohio State Highway Patrol Laboratory's own procedure manual required specific documentation that intravenous fluids were being received by a defendant whose urine is being collected. Appellant argues that O.A.C. § 3701-53-06 "requires that testing shall be in accordance with a laboratory's 'written procedure manual of all analytical techniques or methods used for testing of alcohol or drugs of abuse in bodily substances.' " However, O.A.C. § 3701-53-6 governs "Laboratory requirements" and actually states, in pertinent part, in section (C) that "[t]he laboratory shall have a written procedure manual of all analytical techniques or methods used for testing of alcohol or drugs of abuse in bodily substances." A review of the record indicates that OSP-103.07 Attachment A entitled "Blood/Urine Analysis for Alcohol and Other Drugs," with an effective date of March 11, 2009 states in section 3(d), in pertinent part, that "[i]f a subject is being treated with injections and transfusions, it may have a significant influence on the interpretation of alcohol and other drug analysis results. The officer should document such treatment on the HP-28." OSP-103.07 Attachment A is part of the "Ohio State Highway Patrol Crime Laboratory Toxicology Procedure Manual."

{¶20} It is undisputed that Appellant had an IV at the time his urine was collected. Evidence was introduced at the suppression hearing indicating

Appellant already had an IV placed when he arrived at the hospital and he was receiving normal saline at that time. While at the hospital he also received an antibiotic and Toradol, which is a nonsteroidal pain medication that is not a narcotic. Further, the transcript from the suppression hearing indicates Appellant had not received any amphetamines or narcotics when his urine was collected. It is also undisputed that Trooper Smith was unaware of the documentation requirement associated with intravenous transfusions and, as a result, did not include that documentation on the HP-28 form.

{¶21} Appellant contends this omission prevented the State from demonstrating substantial compliance with the regulations promulgated by the Director of Health in the Ohio Administrative Code. The State, however, argues that while documentation of receipt of intravenous fluids was required in the 2009 version of OSP-103.07 Attachment A, which was in effect in March of 2017, OSP-103.07 Attachment A was revised just six months later, in September of 2017, and this documentation requirement was removed. The State further notes that such documentation is not required by the Ohio Administrative Code. Thus, the State argues that the fact it is not required in the Ohio Administrative Code and because the Ohio State Highway Patrol Laboratory policies and procedures were changed to remove the requirement, the failure to document the receipt of intravenous fluids

on the HP-28 form is, at the most, a clearly de minimis error that does not prevent the State from establishing substantial compliance.

{¶22} Based upon the following, we agree with the State. O.A.C. § 3701-53-05 addresses the collection and handling of blood and urine specimens and contains several requirements, none of which expressly require that the receipt of intravenous fluids be documented when a urine sample is collected. O.A.C. § 3701-53-05(D) provides as follows:

> The collection of a urine specimen must be witnessed to assure that the sample can be authenticated. Urine shall be deposited into a clean glass or plastic screw top container which shall be capped, "*or collected according to the laboratory protocol as written in the laboratory procedure manual*." (Emphasis added).

Section (E) further specifies what must be listed on the label of the sample that is taken, including the name of the suspect, date and time of collection, name or initials of the person collecting the sample and the name or initials of the person sealing the sample. Additionally, section (F) requires refrigeration of the sample while not in transit or under examination. Thus, the Director of Health, through the Ohio Administrative Code, did not find it necessary to expressly require documentation of intravenous fluids when urine is collected.

{¶23} Although section (D), as set forth above, does reference that the collection of a urine specimen be "collected according to the laboratory protocol as written in the laboratory procedure manual[,]" we cannot conclude that the failure to document the receipt of intravenous fluids prevents the State from establishing substantial compliance. We reach this decision in part based upon the Director of Health's failure to expressly require such documentation. We further reach this decision based upon the fact that during the time between when Appellant's urine was collected and when the suppression hearing was held, the Ohio State Highway Patrol omitted this requirement from its laboratory policies and procedures. Most importantly, we reach our decision based upon the expert testimony and medical provider testimony introduced at the suppression hearing.

{¶24} First, Nick Baldauf, the chemical lab supervisor at the Ohio State Highway Patrol crime lab, testified during the hearing. Although the parties here seem to agree that the Ohio State Highway Patrol Crime Laboratory Toxicology Procedure Manual contains policies and procedures relevant to the issues presented in this case, testimony from Mr. Baldauf indicates otherwise. For instance, when asked about the intravenous transfusion documentation requirement, the following exchange took place:

Q: Do you recognize this table of contents?

A: Yes

Q: What, what is that?

A: This our [sic] alcohol procedure manual.

Q: Okay so that's the policy and procedure for the crime lab of the State Highway Patrol?

A: Yes

Q: And, I've attached the, this is a pretty lengthy document, six hundred pages or something like that, is it not?

A: Are you referring?

Q: To the entire policy.

A: Um this procedure manual says its only thirty-seven pages, but we also have just the overall toxicology laboratory manual, and then we have a drug manual, and then we have the actual operating procedures of performing the tests. So

Q: (inaudible) and everything else right?

A: A [sic] like we have permits yes, yes.

Q: So what I've done is I've taken out attached to the table of contents the pertinent portion of the procedure that we're interested in here, and that's attachment A. What, can you describe what that is?

A: OSP one 0 three point 0 seven, yes. Um is this our I'm sorry you have that out of order.

Q:  Yeah I've taken the, the table of contents which references this down here at the bottom.

A:  Okay

Q:  And then I just attached that.

A:  Yea this is a [sic] Ohio State Patrol, um this is a, this isn't like our laboratory manual.  This is from the patrol manual.

Q:  But it references that HP twenty-eight form that we referenced in our exhibit four, exhibit three.  Sorry states [sic] exhibit C.

A:  Okay

Q:  And in that policy under this section here, two B, section three, sub-section D, a [sic] it mentions that specimen's collection [sic] should be witnessed correct?

A:  Yes

Q:  And then one of the other things that is required out of the policies and procedures there is when an individual is getting an IV or some sort of injection that it should be noted on the HP twenty-eight form that's submitted to the crime lab is that right?

A:  Um I believe so again like this isn't part of our manual this is a reference to a Highway Patrol Procedure."

Thus, based upon the foregoing testimony, it appears that the documentation requirement at issue was required by an Ohio State Highway Patrol policy at the time in question, but that requirement was not contained in the actual laboratory policies and procedures, per the chemical lab supervisor at the Ohio State Highway Patrol crime lab.  Further, O.A.C. §§ 3701-53-05 and 06 reference "laboratory procedure manuals" as opposed to patrol manuals.  As such, we are unconvinced that failure to comply with a patrol policy, as opposed to a laboratory policy, prevents the State from establishing substantial compliance with the regulations promulgated by the Director of Health, as contained in the Ohio Administrative Code.

{¶25} Further, even assuming this documentation requirement was part of the "laboratory procedure manual," the pertinent language of OSP-103.07 Attachment A states as follows:  "If a subject is being treated with injections and transfusions, it *may* have significant influence on the interpretation of alcohol and other drug analysis results."  (Emphasis added).  Here, the record reflects Appellant's IV contained only normal saline, an antibiotic and Toradol (a nonsteroidal).  In addition to testing positive for alcohol, Appellant's urine was positive for marijuana, amphetamines and methamphetamines.  Thus, based upon these particular facts, we conclude the trooper's failure constituted a clearly de minimis or minor, procedural deviation which did not prevent the State from

establishing substantial compliance. Further, Appellant introduced no evidence to indicate his receipt of intravenous normal saline, antibiotics, or Toradol would have influenced the drug analysis of his urine specimen. Thus, Appellant failed to demonstrate he was prejudiced by the State's less than technical compliance. Accordingly, we find no merit to this portion of Appellant's assignment of error.

{¶26} Regarding Appellant's argument that that the trial court erred by neglecting to address Trooper Smith's failure to indicate that Appellant was receiving intravenous fluids, we disagree. Appellant's motion to suppress raised many challenges. The argument that the trooper failed to document that Appellant was receiving intravenous fluids was contained in the sixth claim in his motion to suppress. In its decision denying Appellant's motion, the trial court expressly rejected Appellant's argument as to the sixth claim in his motion, based upon the expert testimony introduced by the State. Thus, we find no merit to the argument that the trial court failed to address this claim in violation of Crim.R. 12(F), which requires the court to state its essential findings on the record.

{¶27} Finally, Appellant contends the trial court erred in determining that the urine sample was appropriately refrigerated pursuant to regulation. Appellant notes that O.A.C. § 3701-53-05(F) requires that all urine samples must be refrigerated while not in transit, but he takes issue with the fact that the urine sample was in transit for ten days prior to arriving at the lab for testing. Appellant

concedes there is a lack of case law or other guidance on this issue, with the exception of a Twelfth District Court of Appeals decision in which it was held that a transit time of seven-and-one-half days did not violate the administrative rule, which only required refrigeration while not in transit. See *State v. Partin*, 12th Dist. Warren No. CA2010–04–040, 2011-Ohio-794, ¶ 37 (Feb. 22, 2011), citing *State v. Finley*, 12th Dist. Warren No. CA95-05-041, 1996 WL 71489, *4 (Feb. 20, 1996) (involving a transit time of six days).

{¶28} Appellant concedes the trooper did not violate the rule while the sample was still in his possession prior to mailing it. Further, it is clear that neither the legislature nor the Director of Health has defined what is a reasonable versus an unreasonable time period for a urine sample to be unrefrigerated while in transit. In the absence of any clear guidance stating otherwise, we adhere to the rule which simply requires that the sample be refrigerated while not in transit. In doing so, we find the reasoning of both *Partin* and *Finley* to be persuasive. Although we believe a ten-day transit time is not ideal and may even be considered excessive, Appellant introduced no evidence indicating the condition of the urine sample was compromised as a result. Additionally, Mr. Baldauf testified that such a delay is "not uncommon." As such, we find no merit to Appellant's final argument.

{¶29} Having found no merit to any of the arguments raised under

Appellant's sole assignment of error, his assignment of error is overruled.

Accordingly, the decision of the trial court denying Appellant's motion to suppress

is affirmed, as is the final judgment of the trial court.


**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Jason P. Smith, Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**