[Cite as *In re L.S.*, 2016-Ohio-5582.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: L.S. | : | APPEAL NO. C-150526<br>TRIAL NO. 15-4931z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 31, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Appellant L.S.

**MOCK, Judge.**

{¶1}   L.S. appeals an adjudication of delinquency for acts that, if committed by an adult, would have constituted the offense of carrying a concealed weapon under R.C. 2923.12.  We find no merit in his two assignments of error, and we, therefore, affirm the adjudication.

### I. Facts and Procedure

{¶2}   The record shows that Officer Ben Moore of the Green Township Police Department was on routine patrol when he saw a vehicle run a stop sign at a high rate of speed while turning off of a side street.  When Officer Moore turned his cruiser around, the vehicle increased to "an extreme high rate of speed."  He stated that he believed that "they were attempting to get away."  As Officer Moore followed the vehicle, it kept increasing its speed.  He turned on his lights and sirens, but the car did not stop.  Instead, it ran a red light.

{¶3}   Officer Moore's partner, Officer Biggs, who happened to be sitting in a nearby parking lot, attempted to intercept the vehicle.  The vehicle "made a correction" to avoid him.  It then crashed into a stop sign, and finally stopped about 300 yards away from the sign.

{¶4}   Officer Biggs was the first to approach the vehicle.  He ordered the driver out of the vehicle and detained him.  Officer Moore then approached the driver's side of the vehicle with his gun drawn.  A third officer arrived and approached the passenger side of the vehicle.

{¶5}   L.S. was sitting in the front passenger seat of the vehicle.  Officer Moore told L.S. that he needed to see L.S.'s hands and that L.S. should not move.  Officer Moore noticed a book bag located on the floor between his legs.  He saw L.S. reach for the bag and lift it "slightly" off of the floor.  Officer Moore told him, "[Y]ou

need to keep the bag on the ground * * *, do not touch that bag." L.S. responded, "[I]t's my bag, I'm taking my bag." Moore again told him, "I need to see your hands, do not grab that bag."

{¶6} By that time, the third officer had also approached the vehicle. Moore told L.S. to "step out to my partner, leave the bag where it is, and you're being detained right now for investigation." L.S. was put in handcuffs and placed in the squad car. Another female passenger was also detained. The car was subsequently towed due to the driver's arrest and the occupants' curfew violations. Inside the book bag at L.S.'s feet, the officers found a loaded firearm.

{¶7} L.S. was charged with carrying a concealed weapon. L.S. filed a motion to suppress evidence regarding the contents of the book bag, which the trial court overruled. Following a trial, a magistrate recommended that L.S. be adjudicated delinquent. The trial court denied L.S.'s objections and adopted the magistrate's decision. This appeal followed.

## II. Search and Seizure

{¶8} L.S. presents two assignments of error for review. In his first assignment of error, he contends that the trial court erred in overruling his motion to suppress. He argues that the search of his book bag violated his Fourth Amendment rights. This assignment of error is not well taken.

{¶9} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 61.

{¶10} In overruling L.S.'s motion to suppress, the trial court stated that the search was justified as an inventory search. An inventory search of a lawfully impounded vehicle is an exception to the general prohibition against warrantless searches. *State v. Hathman*, 65 Ohio St.3d 403, 405-406, 604 N.E.2d 73 (1992).

{¶11} To satisfy constitutional requirements, the inventory search must be conducted in good faith and "in accordance with reasonable standardized procedure(s) or established routine." *Id.* at paragraph one of the syllabus; *Ojile* at ¶ 66. While those procedures need not be in writing, the state must show that the police department has a standardized routine policy, and that the officer's conduct conformed to that policy. *Ojile* at ¶ 66. If, during a valid inventory search, a law-enforcement official discovers a closed container, the container may be opened as part of the inventory process if a standardized policy or practice exists governing the opening of closed containers. *Hathman* at paragraph two of the syllabus; *Ojile* at ¶ 66.

{¶12} Moore testified that the officers could not let any of the individuals in the car drive it away, so they were forced to tow it. He stated that when a vehicle is towed, police officers must conduct an inventory of the contents of the vehicle "to account for any personal belongings" and to protect all involved. He stated that he followed the Green Township Police Department's inventory search policies "one hundred percent."

{¶13} A written copy of those procedures was introduced into evidence. But it contained no specific written policy or procedure about the opening of closed containers during an inventory search. Further, when Office Moore was specifically asked about such a policy or procedure, he could not provide an answer.

{¶14} The Ohio Supreme Court has stated that "the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify

the opening of closed containers encountered during the inventory search." *Hathman*, 65 Ohio St.3d at 408, 604 N.E.2d 743. It went on to state that "[r]ather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search." *Id.* Consequently, we hold that the inventory exception does not apply in this case.

{¶15} Nevertheless, the search was justified under the automobile exception to the warrant requirement. Under that exception, police may conduct a warrantless search of an entire vehicle if the officers have probable cause to believe that they will discover evidence of a crime. *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000); *State v. Jones*, 1st Dist. Hamilton No. C-130069, 2014-Ohio-1201, ¶ 6; *State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 859 N.E.2d 781, ¶ 18 (1st Dist.). An officer who has probable cause to search an automobile may search all packages and containers inside the car if he has probable cause to believe that the package or container contains contraband. *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); *State v. Salvato*, 1st Dist. Hamilton No. C-980939, 1999 Ohio App. LEXIS 3716, *4 (Aug. 13, 1999).

{¶16} Probable cause to search exists where "known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Jones* at ¶ 16, quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Whether probable cause existed depends on the objective factors articulated by the officer. If the search is objectively reasonable, the officer's stated reason for the search is irrelevant. *Salvato* at *5.

{¶17} In this case Officer Moore and the other police officers observed a vehicle driving at a high rate of speed and running a stop sign. When he put on his lights and siren, the vehicle sped up and engaged in a high-speed chase with the

officers. When another officer tried to stop the vehicle, it attempted to evade the police and only came to a stop when it crashed through a stop sign.

{¶18} Officers approached the car with guns drawn. While guns were pointed at him, L.S. ignored Officer Moore's repeated commands to put his hands up and not to touch the book bag. He acknowledged it was his book bag and told the officers that he was taking his bag. Under the totality of the circumstances, the police officers had probable cause to believe that the book bag contained contraband or evidence of a crime. Therefore, the search was justified under the automobile exception to the warrant requirement.

{¶19} Unlike a purely protective search or a search incident to arrest, it is irrelevant under the automobile exception that the police officers had removed the occupants of the car from the vehicle and were not going to allow them to return. *See Arizona v. Gant*, 556 U.S. 332, 341-344, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); *Michigan v. Long*, 463 U.S. 1032, 1048-1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *State v. Smith*, 1st Dist. Hamilton No. C-110727, 2013-Ohio-2208, ¶ 16-17. As long as the officers had probable cause to search the car, they could conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages that could contain the object of the search. *State v. Welch*, 18 Ohio St.3d 88, 92, 480 N.E.2d 384 (1985). "From a constitutional perspective, there is no difference between seizing and holding a vehicle while waiting for a search warrant and immediately searching the vehicle, so long as probable cause exists." *State v. Ward*, 1st Dist. Hamilton No. C-040379, 2005-Ohio-3036, ¶ 31. No special exigency is required as long as probable cause exists due to the lesser expectation of privacy in an automobile. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *State v. Miller*, 4th Dist. Washington No. 06CA57, 2007-Ohio-6909, ¶ 19.

**{¶20}** The trial court can be right for the wrong reasons. *See Greenacres Found. v. Bd. of Bldg. Appeals*, 1st Dist. Hamilton No. C-120131, 2012-Ohio-4784, ¶ 15; *State v. Gipson*, 1st Dist. Hamilton Nos. C-960867 and C-960881, 1997 Ohio App. LEXIS 4404, *24-25 (Sept. 26, 1997). The search of L.S.'s book bag did not violate his Fourth Amendment rights, and the trial court did not err in overruling his motion to suppress. Consequently, we overrule his first assignment of error.

### II. Physical Restraints during Trial

**{¶21}** In his second assignment of error, L.S. contends that the trial court erred in holding him in physical restraints during his trial. He argues that the court made no individual determination of the need to restrain him during trial. While we agree that the trial court erred, we find that the error was harmless.

**{¶22}** The decision whether to impose restraints on a defendant lies within the trial court's discretion. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 153. But that discretion is not unfettered. The violent nature of the crimes for which the defendant is being tried will not alone justify the use of restraints. The defendant's specific behavior must justify the restraints. *See State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 104-105; *Sate v. Leonard*, 1st Dist. Hamilton No. C-061025, 2007-Ohio-7095, ¶ 6-7.

**{¶23}** L.S.'s counsel filed a written motion to have L.S. appear free from restraints and renewed that motion orally at the start of the adjudicatory hearing. The juvenile court summarily overruled the motion. We agree that the trial court erred in doing so without a showing of a particularized need. *See Jackson* at ¶ 153. The Ohio Supreme Court has stated that "no one should be tried while shackled, absent unusual circumstances." *Adams* at ¶ 104, quoting *State v. Kidder*, 32 Ohio St.3d 279, 285, 513 N.E.2d 311 (1987). One of the justifications for this rule is that

7

trying a defendant in shackles presents a risk that jurors will be influenced by the shackles in their deliberations, which undermines the presumption of innocence. *Deck v. Missouri*, 544 U.S. 622, 630, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005); *Adams* at ¶ 108. Because this case was tried to the court, any physical restraints were not visible to a jury. In a bench trial, unlike in a jury trial, the court is presumed to be able to disregard the defendant's appearing in shackles. *See Jackson* at ¶ 154.

{¶24} L.S. also argues that the shackles interfered with his ability to communicate with his counsel because he could not lift his hands to the table to write. *See Jackson* at ¶ 157. But the record is devoid of any evidence to support this claim. At no point did L.S. inform the court that he was hampered in his ability to communicate with his counsel.

{¶25} Under the circumstances, we find that there was no reasonable possibility that the error contributed to the adjudication of delinquency. Therefore, it was harmless beyond a reasonable doubt. *See State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus; *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 33. We overrule L.S.'s second assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **STAUTBERG, J.,** concur.

Please note:
The court has recorded its own entry this date.