[Cite as *State v. Smith*, 2025-Ohio-4806.]

THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                         :            No. 23AP-669
                                         (C.P.C. No. 21CR-4661)

v.                                                     :

Raetta L. Smith,                                       :            (REGULAR CALENDAR)

      Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on October 21, 2025

---

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Benjamin A. Tracy*, for appellee.
**Argued:** *Benjamin A. Tracy*.

**On brief:** *Mitchell A. Williams*, Franklin County Public Defender, and *Robert D. Essex*, for appellant.
**Argued:** *Robert D. Essex*.

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Raetta L. Smith, appeals from an October 12, 2023 amended judgment entry sentencing her to two years of community control after pleading no contest to two counts of improperly handling firearms in a motor vehicle. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 5, 2021, Smith was indicted by a Franklin County Grand Jury on two counts of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16, felonies of the fourth degree (Counts 1 and 2). On November 22, 2021, Smith entered a plea of not guilty and counsel was appointed in this matter. On March 7, 2023, counsel for Smith filed a motion to suppress evidence and request for a hearing. Smith

argued that the trial court should suppress evidence against her as it was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 14 and 16 of the Ohio Constitution.  Specifically, Smith argued that law enforcement's inventory search was not in compliance with any standardized departmental policy regarding the opening of closed containers.  On March 21, 2023, plaintiff-appellee, State of Ohio, filed a memorandum in opposition arguing that the evidence should not be suppressed.  On June 21, 2023, the trial court held a hearing on the motion at which the following evidence was adduced.

{¶ 3}    Nicholas Kingsbury is a police officer with the Grove City Division of Police. (June 21, 2023 Tr. at 4.)  On May 27, 2021, Kingsbury observed a vehicle drive over the sidewalk while making a left turn out of a gas station onto Stringtown Road.  (Tr. at 4-6.) Kingsbury then observed that the same vehicle had only one operating brake light.  (Tr. at 6.)[1] Kingsbury initiated a traffic stop at that time.  (Tr. at 6.)  Kingsbury identified Smith in the courtroom as the driver of the vehicle on the night in question.  (Tr. at 5.)  Kingsbury testified that a male passenger and three dogs were also in the vehicle.  (Tr. at 11, 28.)  When Kingsbury checked Smith's information, he discovered that her driver's license was suspended, and that the registration was not registered to the vehicle.  (Tr. at 7.)  At this time, another officer, Mitchell Conn, arrived at the scene.  (Tr. at 9, 38.)  The officers determined, due to the heavy traffic at the stop, lack of registration, and the broken brake light that the vehicle should be impounded.  (Tr. at 9, 14-15.)  Kingsbury allowed Smith and the other passenger to step out of the vehicle, collect their belongings, and move with their dogs to the side of the road.  (Tr. at 28-31.)

{¶ 4}    Kingsbury testified that he is required to take inventory prior to impounding the vehicle.  (Tr. at 9-10.)  According to Kingsbury, Conn initiated the inventory search.  (Tr. at 10.)  During the search, Conn discovered drug paraphernalia in the vehicle.  (Tr. at 10.) Kingsbury advised Smith that they had discovered drug paraphernalia, and that she would be detained.  (Tr. at 10, 17.)  Smith disclosed that she had firearms on her person at that time.  (Tr. at 10.)  Smith admitted that she did not have a concealed carry permit.  (Tr. at 11.)  Kingsbury looked in Smith's bags and located the two firearms.  (Tr. at 12.)

---

[1] This was corrected from the prior testimony that Smith had a broken "taillight." (Tr. at 23.)

{¶ 5}    Kingsbury is familiar with the City of Grove City Division of Police General Orders ("General Orders") regarding when he is authorized to initiate a search. (Tr. at 17.) Kingsbury testified that 1.2.4 of the General Orders states, in relevant part, "search after lawful impoundment of seized vehicles or other property, and in parentheses, inventory search." (Tr. at 17-18.) Kingsbury believed that the orders permitted him to search after a lawful impoundment. (Tr. at 18.) Kingsbury also testified that 61.4.2(B) of the General Orders provides, "[w]hen a hazard is detected and the officer feels the hazard requires immediate correction (such as an electric wire on the roadway or other obstructions), the officer immediately informs their supervisor." (Tr. at 18.) Kingsbury notified his supervisor of the vehicle as a hazardous condition, who approved the impound of the vehicle. (Tr. at 19, 21.) Kingsbury acknowledged the General Orders also provided, "officers remove or impound vehicles when the removal is necessary in the interest of public safety because of fire, flood, storm, snow or other emergencies, natural or man-made." (Tr. at 20.) Kingsbury believed that this provision includes operating a vehicle without a license. (Tr. at 20.)

{¶ 6}    On cross-examination, Kingsbury conceded that he initially stated to Smith that "[he would] give her a citation for these things and then she can be on her way," and he would allow a licensed driver to get her vehicle. (Tr. at 24, 30.) Kingsbury acknowledged that while he could have arrested Smith, he did not arrest her for driving under suspension. (Tr. at 24, 30.) When the officers decided to impound the vehicle, they asked Smith and the passenger to exit the vehicle. (Tr. at 27.) When Smith exited the vehicle, she was in possession of her purse. (Tr. at 28.) Smith also retrieved a black plastic bag from the trunk of the vehicle. (Tr. at 31.) Kingsbury initially wrote Smith a traffic citation and informed her of the court date. (Tr. at 30.) Kingsbury again acknowledged that he did not arrest her for the traffic violations. (Tr. at 30, 31.) According to Kingsbury, officers typically allow individuals to get valuables and personal property prior to impounding the vehicle. (Tr. at 31.) Kingsbury testified as to 61.4.3(G) of the General Orders regarding the vehicle impound form. (Tr. at 32.) Kingsbury acknowledged that there was a lot of property in the vehicle.

{¶ 7}    Kingsbury conceded that the General Orders regarding officers conducting an inventory of property from an impounded vehicle does not provide anything about the

opening of closed containers. (Tr. at 34.) Kingsbury stated that once the drug paraphernalia was found, he detained Smith. (Tr. at 35.) Only after Smith was detained did she disclose that she had two firearms. (Tr. at 35.)

{¶ 8} On re-direct examination, Kingsbury stated that one firearm was found in Smith's black plastic bag and the other in her purse. (Tr. at 36.) Kingsbury acknowledged both of those bags were removed from the vehicle. (Tr. at 36.) Kingsbury admitted that he did not know Smith had removed firearms from the vehicle at that point. (Tr. at 36.) Kingsbury noted he would not have done an inventory search of items not in the vehicle. (Tr. at 36.) Kingsbury reiterated that he did not arrest Smith for driving without a license. (Tr. at 37.)

{¶ 9} Conn is an officer with the Grove City Division of Police. (Tr. at 38.) On May 27, 2021, Conn assisted Kingsbury with a stopped vehicle that blocked Stringtown Road. (Tr. at 39.) Conn and Kingsbury, believing that the stopped vehicle created a dangerous situation as the road was extremely busy, decided that the vehicle should be impounded. (Tr. at 39.) Conn initiated the inventory search of the property in the vehicle. (Tr. at 40.) Conn opened a black plastic bag behind the driver's seat and discovered a crack pipe. (Tr. at 40.) After Smith disclosed that she had firearms, Conn searched the two bags on her person and located the two firearms. (Tr. at 41.)

{¶ 10} On cross-examination, Conn acknowledged that he initiated the inventory search. (Tr. at 44.) Conn stated it "would seem probable" that the bag he took out of the back of the vehicle is the one in which he found the drug paraphernalia. (Tr. at 47.)

{¶ 11} On June 22, 2023, the trial court denied Smith's motion to suppress. On October 9, 2023, Smith entered a plea of no contest to both counts of improperly handling firearms in a motor vehicle. The trial court sentenced Smith to two years of community control with a reserved 18-month prison sentence. The trial court issued an amended judgment entry on October 12, 2023.

{¶ 12} Smith filed a timely notice of appeal on November 7, 2023.

## II. ASSIGNMENT OF ERROR

{¶ 13} Smith assigns the following as trial court error:

> Appellant's right to be from an unreasonable search and seizure under the United States and Ohio Constitutions was violated when the trial court denied Defendant-Appellant's

motion to suppress evidence where the testimony was clear that the evidence obtained during an inventory search was in a closed container and there was no departmental policy regarding the opening of closed containers.

(Sic passim.)

## III. STANDARD OF REVIEW

{¶ 14} This court's review of a trial court's decision to deny a motion to suppress presents a mixed question of law and fact. *State v. Diaw*, 2024-Ohio-2237, ¶ 19 (10th Dist.), citing *State v. Robertson*, 2023-Ohio-2746, ¶ 13 (10th Dist.), citing *State v. Harrison*, 2021-Ohio-4465, ¶ 11, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. Our review of a trial court's decision regarding a motion to suppress is two-fold. *Diaw* at ¶ 20, citing *State v. Ivery*, 2023-Ohio-3495, ¶ 30 (10th Dist.), citing *State v. Pilgrim*, 2009-Ohio-5357, ¶ 13 (10th Dist.). In a suppression hearing, the trial court first assumes the role of the trier of fact and, thus, is best positioned to resolve questions of fact and determine the credibility of the witnesses. *Robertson* at ¶ 13, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, we review a trial court's findings of fact to determine whether they are supported by competent, credible evidence. *In re N.D.*, 2024-Ohio-5779, ¶ 22 (10th Dist.), citing *In re D.B.*, 2018-Ohio-1247, ¶ 15 (10th Dist.), citing *State v. Castagnola*, 2015-Ohio-1565, ¶ 32. We then independently resolve whether the facts satisfy the applicable legal standard without deference to the trial court's legal conclusions. *Id.*

## IV. LEGAL ANALYSIS

{¶ 15} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Supreme Court of Ohio has held that Article I, Section 14 of the Ohio Constitution offers the same protection as the Fourth Amendment in felony cases. *State v. Jones*, 2015-Ohio-483, ¶ 12, citing *State v. Smith*, 2009-Ohio-6426, ¶ 10, fn. 1. These constitutional safeguards provide a restraint on the state and, more specifically, law enforcement, to protect an individual's privacy interests and security from arbitrary invasions by government officials. *Diaw* at ¶ 33, citing *State v. Rogers*, 2023-Ohio-2749, ¶ 13 (10th Dist.), citing *Camara v. Mun.*

*Court of San Francisco*, 387 U.S. 523, 528 (1967); *Ivery* at ¶ 34, citing *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 17.

{¶ 16} When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of demonstrating that the search falls under one of the established exceptions of the Fourth Amendment's warrant requirement. *State v. Johnson*, 2022-Ohio-1733, ¶ 48 (10th Dist.); *State v. Roberts*, 2006-Ohio-3665, ¶ 98 ("[w]hen police conduct a warrantless search, the state bears the burden of establishing the validity of the search").

{¶ 17} It is well established that, subject to only a few well-delineated exceptions, warrantless searches are per se unreasonable. *Robertson* at ¶ 15, citing *Los Angeles v. Patel*, 576 U.S. 409, 419 (2015), citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The inventory-search exception falls within this limited category. *Johnson* at ¶ 51, citing *Banks-Harvey* at ¶ 20. "Under this exception, when a vehicle is lawfully impounded, police are permitted to follow a routine practice of administrative procedures for securing and inventorying the contents of the vehicle. . . . An inventory search is intended to (1) protect an individual's property while it is in police custody; (2) protect police against claims of lost, stolen, or vandalized property; and (3) protect police from dangerous instrumentalities." *Id.*

{¶ 18} As an inventory search is an administrative caretaking function distinct from a criminal investigation, the standard of probable cause is not implicated. *Johnson* at ¶ 52. Instead, an inventory search of a lawfully impounded vehicle must meet the Fourth Amendment to the United States Constitution's reasonableness requirement as well as "be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *Id.*, citing *State v. Hathman*, 1992-Ohio-63, 65 Ohio St.3d 403 (1992), paragraph one of the syllabus, citing *South Dakota v. Opperman*, 428 U.S. 364 (1976). "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a *standardized policy or practice specifically governing the opening of such containers*." (Emphasis added.) *Hathman* at paragraph two of the syllabus. Such standardized policies and procedures may be established by written rules and regulations or through testimony regarding the department's standard

practices. *Johnson* at ¶ 53, citing *United States v. Williams*, 930 F.3d 44, 54 (2d Cir. 2019). General policies and procedures governing inventory searches are insufficient to justify opening closed containers encountered during an inventory search. *Hathman* at 408. " 'Some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search.' " *In re L.S.*, 2016-Ohio-5582, ¶ 14 (1st Dist.), quoting *Hathman* at 408.

{¶ 19} The General Orders Directive 61.4.3(H), which sets out how officers impounding vehicles conduct an inventory of property, provides in relevant part:

> 1. An officer removes property that is too valuable to remain in the vehicle. All property removed is properly tagged and entered in the property log and forwarded to the property room.
> 2. It is at the discretion of the impounding officer whether property remains in the vehicle or held in the property room.
> 3. Property is listed in the inventory section of the impound form regardless if it remained in the vehicle or was forwarded to the property room.

(State's Ex. C at 9.)

{¶ 20} While the Grove City Division of Police provides General Orders regarding when and how a vehicle may be impounded, it fails to include a written policy regarding the opening of closed containers. When asked if this section of the General Orders provides a policy regarding opening closed containers during an inventory search, Kingsbury stated, "[n]ot particularly, no." (Tr. at 34.) The state also failed to demonstrate that the Grove City Division of Police had an established routine practice within the agency concerning the opening of closed containers.

{¶ 21} The state argues that the inventory search was valid based on the cited written departmental policies. (Appellee's Brief at 15, citing State's Exs. B-C.) While the state concedes that there is no separate policy regarding "containers," the polices that were introduced address inventory searches and allow the officers to remove valuable items from impounded vehicles. The state also notes a more general policy empowers officers to act in accordance with the law. The state cites *State v. Mesa*, 1999-Ohio-253, 87 Ohio St.3d 105, for the proposition that the Supreme Court of Ohio has shown a willingness to make reasonable inferences from policies in this context. (Appellee's Brief at 16.)

{¶ 22} We find these arguments unpersuasive. The Supreme Court has expressly rejected the state's position finding that a closed container may be opened only "as part of

the inventory process if there is in existence a standardized policy or practice *specifically* governing the opening of such containers." (Emphasis added.) *Hathman* at paragraph two of the syllabus.  We also find the state's reliance on *Mesa* without merit.  In *Mesa*, law enforcement discovered a handgun within the console of the vehicle during an inventory search.  The policy in question provided that " 'open compartments of the vehicle are to be searched' " and " 'locked compartments shall not be opened by the officer during a standard inventory.' "    *Mesa* at 105, quoting Lakewood Police Department Towing-General Information/Procedures, Section 9.1.1.  The *Mesa* court found the inventory search was administered in good faith and consistent with reasonable police procedure explaining, "[i]n the case at bar, we are not confronted with the search of a 'closed container.'  Instead, we are confronted with the examination of an unlocked but closed compartment of an automobile, i.e., the armrest console." (Emphasis omitted.)  *Id.* at 110.  The *Mesa* court went on to explain that the policy in question, "does not prohibit officers from searching closed compartments.  Rather, the only restriction imposed by the policy involves those compartments that are locked.  Moreover, Lakewood officers testified that open compartments are simply compartments that are not locked." *Id.*  Here, Conn discovered the drug paraphernalia in a closed container not an unlocked but closed compartment.  Unlike the facts in *Mesa*, the Grove City Division of Police were confronted with a closed container and had no written or standardized procedure specifically governing opening such a container.

{¶ 23} The state also contends that we need not even examine whether the inventory search was constitutional as Kingsbury was within his authority to search Smith as she committed an arrestable offense.  (Appellee's Brief 9-10.)  "In other words, the officer who witnessed Smith driving on a suspended license was entitled to arrest her and search the bags she had with her at the side of the road."  (Appellee's Brief 9.)  The state argues that the search was permissible because Kingsbury had a legally valid and sufficient justification to arrest Smith, did arrest Smith, and the guns were found during a search incident to her arrest.  (Appellee's Brief at 11.)

{¶ 24} A search incident to arrest is another exception to the general rule that warrantless searches are per se unreasonable.  *State v. Malcolm*, 2022-Ohio-2785, ¶ 23 (5th Dist.), citing *State v. Mims*, 2006-Ohio-862, ¶ 23 (6th Dist.).  "The search incident to

arrest exception to the warrant requirement 'derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.' " *State v. Moreland*, 2017-Ohio-9383, ¶ 14-15, quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009). As such, "an officer making a lawful arrest may conduct a warrantless search of the arrestee's person and the area within their immediate control." *Id.* at ¶ 14, citing *Chimel v. California*, 395 U.S. 752, 763 (1969). In order for a search to be conducted under the search incident to arrest exception, the underlying arrest must be lawful. *State v. Whipple*, 2017-Ohio-1094, ¶ 15 (12th Dist.); *State v. Willis*, 2013-Ohio-2391, ¶ 24 (12th Dist.). Black's Law Dictionary defines "incident" as "[d]ependent on, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)." *Black's Law Dictionary* (12th Ed. 2024). Thus, a search "incident" to arrest is, by definition, "dependent" or "arises out of" a lawful arrest taking place.

{¶ 25} Here, there is no doubt that Smith was stopped based on various traffic infractions. The question becomes whether she was under arrest prior to the search. "An arrest occurs when the following four requisite elements are involved: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *Columbus v. Beasly*, 2019-Ohio-719, ¶ 58 (10th Dist.), citing *State v. Darrah*, 64 Ohio St.2d 22, 26 (1980).

{¶ 26} Upon review, we find that Kingsbury had no intent to arrest Smith prior to the unlawful search. In fact, quite the opposite. Kingsbury conceded that he was not going to arrest Smith for driving while under suspension. Kingsbury acknowledged, "[he would] give [Smith] a citation for these things and then she can be on her way." (Tr. at 24.) Kingsbury conceded that while he could have arrested Smith, he did not arrest her for driving under suspension. (Tr. at 24.) It is apparent that while Kingsbury had the right to arrest Smith, no arrest took place prior to the discovery of the drug paraphernalia. Because the search occurred prior to the arrest, it cannot be considered a search incident to arrest. *See also State v. Owens*, 302 Ore. 196, 211 (1986) ("It is not that an officer who has valid reason to make an arrest also has valid reason to search for evidence of the crime for which he makes the arrest. If reasons sufficient for an arrest by themselves sufficed to dispense with a search warrant, the actual arrest would be immaterial and unnecessary for the

search. That obviously is not the law."). As acknowledged by the state, *see* appellee's brief at 10, fn. 2, fruits of a search incident to arrest may not provide the legal justification for the arrest. *Smith v. Ohio*, 494 U.S. 541, 543 (1990).

{¶ 27} Having found that none of the exceptions to the warrant requirement are applicable, we turn to whether the evidence should be excluded. The state, *see* appellee's brief at 7, relies on *Utah v. Strieff*, 579 U.S. 232, 238 (2016) for the proposition that "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." The state argues that exclusion of evidence is improper because the crack pipe is not being used as evidence in this case. (Appellee's Brief at 8.)

{¶ 28} As a check on improper warrantless searches, the Supreme Court created the exclusionary rule, which precludes the use of evidence obtained in violation of the Fourth Amendment in a criminal proceeding. *Davis v. United States*, 564 U.S. 229, 236 (2011), citing *Elkins v. United States*, 364 U.S. 206, 217 (1960). Not only is the initial evidence obtained in violation of the Fourth Amendment from an unconstitutional search excluded, but the derivative evidence gained by exploitation of the illegal search, often referred to as " 'fruit of the poisonous tree,' " must also be suppressed. *Diaw* at ¶ 35, quoting *Wong Sun v. United States*, 371 U.S. 471, 484-489 (1963); *Banks-Harvey* at ¶ 25. Indeed, as noted in *Wong Sun*, "[w]e need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun* at 488. (Further citation omitted.)

{¶ 29} Here, we conclude that the firearms were "come at by the exploitation of that illegality" and, therefore, may not be used against Smith. *Id.* We find the state's reliance on *Strieff* misplaced as the search of the bags and subsequent arrest immediately followed the discovery of the drug paraphernalia in the closed container. Nor do we find that there was an intervening circumstance, as was the valid warrant in *Strieff*, that strongly militated against suppression. *See, e.g., State v. Carter*, 2020-Ohio-589, ¶ 20 (10th Dist.). Because

the discovery of the drug paraphernalia was the result of Conn improperly opening the closed container, all evidence obtained as a result of the search must be suppressed.

{¶ 30} Accordingly, Smith's sole assignment of error is sustained.

## V.  CONCLUSION

{¶ 31} Based on the foregoing, Smith's sole assignment of error is sustained.  This matter is reversed and remanded to the Franklin County Court of Common Pleas for further proceeding consistent with this judgment.

*Judgment reversed*;
*cause remanded*.

DORRIAN and BOGGS, JJ., concur.

DORRIAN, J., concurring.

{¶ 32} Given the facts of this case, I concur with the majority.

_____